**PALLADIAN PARTNERS, INC., Protestor,**

v.

**UNITED STATES, Defendant.**

**No. 14–317C**

United States Court of Federal Claims.

Filed: May 30, 2014

Special Master's ruling as to causation.

Daniel E. Chudd, Law Offices of Jenner & Block, LLP, Washington, D.C., for protestor. With him were Damien C. Specht and Charles L. Capito, Law Offices of Jenner & Block, LLP, Washington, D.C.

Domenique G. Kirchner, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her were Stuart F. Delery, Assistant Attorney General, Robert E. Kirschman, Jr., Director, Commercial Litigation Branch, and Devin A. Wolak, Trial Attorney, Commercial Litigation Branch. Also with her were Jason Blindauer, Office of General Counsel, United States Department of Health and Human Services, of counsel, and Beverley E. Hazle-

wood, Office of General Counsel, United States Small Business Administration, of counsel.

Pre–Award Bid Protest; Injunction; Jurisdiction; Standing; Cross–Motions for Judgment on the Administrative Record; Small Business Administration Office of Hearings and Appeals; NAICS Code 541611.

## OPINION

HORN, J.

Protestor, Palladian Partners, Inc. (Palladian), filed a pre-award bid protest on April 21, 2014, seeking "declaratory and injunctive relief to enjoin the National Institute on Drug Abuse" (NIDA), an institute within the National Institutes of Health (NIH), from accepting and evaluating proposals under solicitation N01DA–14–4423 (the solicitation), for a "NIH Pain Consortium Centers of Excellence in Pain Education Coordination Center." Protestor states that it is a "communications company serving both the government and nonprofit customers in the health and social science sectors," and that it is "the incumbent provider of the services called for under the Solicitation as a subcontractor to Altarum Institute." The solicitation was initially issued as a small business set-aside under North American Industry Classification System (NAICS) code 541712, "Research and Development in the Physical, Engineering, and Life Sciences (except Biotechnology)," with offerors limited to small businesses with 500 employees or fewer. *See* 13 C.F.R. § 121.201 (2014). Following a final decision by the United States Small Business Administration Office of Hearings and Appeals, NIDA amended the solicitation to be under NAICS code 541611, "Administrative Management and General Management Consulting Services," with offerors limited to small businesses with annual receipts of $14.0 million or less, with no restriction on the number of employees. *See id.* Palladian states in its complaint before this court that it is ineligible to compete under the amended solicitation, but was able to compete when the solicitation was issued under NAICS code 541712.

Protestor alleges that the decision by the NIDA contracting officer to amend the solicitation to be under NAICS code 541611 was "arbitrary, capricious, an abuse of discretion, and lacks a rational basis." Protestor contends, "[f]or size standard purposes, a product or service shall be classified in only one industry, whose definition *best describes* the principal nature of the product or service being acquired even though for other purposes it could be classified in more than one." (emphasis in original). Protestor alleges that, based on the requirements of the solicitation, the agency should have issued the solicitation under a third NAICS code, 519130, "Internet Publishing and Broadcasting and Web Search Portals," which would allow the agency to accept offers from small businesses, including Palladian, with 500 employees or fewer. *See id.* Protestor seeks to enjoin NIDA from accepting and evaluating offers under the solicitation, as amended, and, further, to have the court find that NIDA should have amended the solicitation to be under NAICS code 519130, instead of NAICS code 541611.

On May 15, 2014, this court held a hearing and issued an oral decision, finding that the amendment of solicitation N01DA–14–4423 to be under NAICS code 541611, "Administrative Management and General Management Consulting Services," was an arbitrary and capricious action by the contracting officer, which lacked a rational basis. At the May 15, 2014 hearing, the court issued a preliminary injunction against NIDA from proceeding with the solicitation under NAICS code 541611. This written opinion memorializes the oral decision issued on May 15, 2014, and issues a permanent injunction against NIDA from proceeding with the solicitation under NAICS code 541611.

## FINDINGS OF FACT

The NIH operates twelve "Centers of Excellence in Pain Education." "The major goal of the Centers of Excellence in Pain Education (CoEPEs) Initiative of the NIH Pain Consortium is to develop pain management training and educational resources for medical, dental, nursing, and pharmacy students to advance the assessment, diagnosis,

and safe treatment of pain." On February 28, 2014, the "NIDA R&D Contracts Management Branch" issued solicitation N01DA–14–4423, titled: "NIH Pain Consortium Centers of Excellence in Pain Education Coordinating Center."[1] The solicitation anticipated that the awarded contract would be a "multiple-year Cost–Reimbursement type Completion contract with a Period of Performance of 1 year, with four 1 year options." The solicitation estimated that the work required would be "3320 direct labor hours" for each contract year.

The solicitation explained, under "**DESCRIPTION–STATEMENT OF WORK:**"

Under this contract, the NIH Pain Consortium will fund a Coordination Center to facilitate the activities of the CoEPEs; their interactions and collaborations with the NIH Pain Consortium, and their interactions and collaborations with other organizations and individuals interested in promoting pain education. These include non-CoEPE designated universities, professional societies, and patient advocacy groups. The Coordination Center will coordinate the NIH Pain Consortium review of the materials provided by the CoEPEs; will provide feedback to the CoEPEs about the results of these reviews; will discuss reviews with the Pain Consortium; and will communicate what steps must be taken to make materials suitable for processing and publication on the NIH Pain Consortium website.

The Coordination Center will use content submitted by the CoEPEs to create online interactive teaching tools for pain education. These teaching tools present individual cases of patients who have pain, and challenge the user to diagnose and propose treatment, and will offer interactive guidance and solutions.

The Coordination Center will also facilitate the CoEPEs as they evaluate the impact of the use of these training materials, and also facilitate both CoEPE and NIH Pain Consortium dissemination of the results of these evaluations.

With the new competition for CoEPE funding in a separate solicitation, we expect that some new CoEPEs will be funded, whereas some of our currently funded CoEPEs may not receive new contracts. However, all previously funded CoEPEs will be invited to retain CoEPE designations and continue to participate in CoEPE program. The Coordination Center will facilitate this involvement.

(capitalization and emphasis in original).

As reflected in the administrative record, the solicitation was posted on the NIH website,[2] which also provided a "**Synopsis**" of the solicitation, (emphasis in original), repeated below in relevant part:

NIDA intends to solicit proposals from qualified small businesses (NAICS Code 541712) for Coordination Center to work in conjunction with the NIH Pain Consortium Centers of Excellence in Pain Education (CoEPEs). The Coordination Center will be to maintain and facilitate conversations and collaborations of the CoEPEs on an interactive online communication portal and via other means. This Center will also create online interactive case based teaching scenarios that will be put on the NIH Pain Consortium site and used in teaching students in various professional schools (e.g. nursing, dental, medical and pharmacy schools) about how to diagnose and properly treat pain. Further, the Coordinating Center will design, program, maintain and update the page to be place [sic] on the NIH website. The Coordinating Center will review content from the CoEPEs for each case, proofread and correct content, and program content into interactive cases. One example of a program to create these cases is Storyline, but similar programs may be used. However,

---

1. The solicitation and administrative record alternate between using the terms "Coordinating Center" and "Coordination Center." The term "Coordinating Center" is used in the solicitation's cover page. The text of the solicitation generally uses the term "Coordination Center" and the parties use the term "Coordination Cen-

ter" in their filings. Therefore, this opinion uses the term "Coordination Center."

2. The administrative record reflects that the website images were retrieved from the NIH website on April 23, 2014.

all cases must be made 508 compliant,[3] must integrate into the major learning management systems used by teaching institutions, and must be free for the end users. The contractor must ensure consistency across the cases, in terms of content, presentation and interactivity. It will further coordinate the NIH Pain Consortium review and revision of submitted materials. Further, the contractor is expected to facilitate the NIH review [sic] these cases for scientific and education correctness and value, by a person(s) with a higher academic degree and expertise in online education and/or pain and analgesia. The CoEPEs will publish papers, present at professional conferences and disseminate information about their pain education efforts in other ways, and the Coordinating Center will facilitate this process in numerous ways (e.g. proofreading and editing, facilitating communication, organizing planning meetings and teleconferences). The Coordination Center will facilitate interactions between the CoEPEs and the NIH Pain Consortium, including reducing redundancy in final product and filling important treatment education gaps. Further, the Coordinating Center will coordinate and facilitate interactions and collaborations of the CoEPEs and other organizations and individuals interested in promoting pain education.

Under the solicitation's **"DESCRIPTION–STATEMENT OF WORK," "Services to be Performed,"** the contractor was to be responsible for seven *"Specific Requirements,"* (capitalization and emphasis in original), also called Tasks, repeated in full below:

*Task 1:*

The contractor will create monthly reports. Monthly progress reports will be furnished on or before the fifth (5th) calendar day of each month. These reports shall include a narrative description of progress made during the reporting period, problems en-

countered, current milestone*schedule status, and any proposed revisions to the spending plan.

*Task 2:*

The Contractor will maintain, host and manage an interactive online communication portal for the NIH, Contractor and CoEPEs to use. It will also pay any licensee/software fees.

*Task 3:*

The Contractor will facilitate the development of the CoEPEs case-based scenarios. **FOR PROPOSAL PURPOSES:** There will be approximately 12 of these case based scenarios per year in need of development.

The Contractor will coordinate the process by which CoEPEs submit their materials to be used in the development of cases, and any supplementary materials. The Contractor will facilitate NIH Pain Consortium evaluation of proposed cases and other materials to be produced, and ensure that redundancies are minimized and significant areas are covered. When materials must be revised by the CoEPEs, the Contractor will facilitate this process though various forms of communication; developing and disseminating timetables with deadlines; summarizing the needs of the NIH; and ensuring that the CoEPEs respond to the NIH reviews in a reasonable, time sensitive and comprehensive way.

The Contractor will use the materials submitted by the CoEPEs to create the online cases. These cases must be interactive (e.g. allow for answers to be entered and feedback to be given immediately), and include graphics and embedded videos. These cases will be put online and must be 508 compliant as mandated by HHS [The United States Department of Health and Human Services]; provided at no cost to the end user, and must interface well with the common learning management systems used by universities and colleges, for ex-

3. Section 508 of the Rehabilitation Act of 1973, P.L. 93–112, 87 Stat. 355 (1973) (added in the Rehabilitation Act Amendments of 1986, P.L. 99–506, 100 Stat. 1807 (1986), and codified as amended at 29 U.S.C. § 794d (2012)), "requires that federal departments and agencies ensure that their electronic and information technolo-gy," either created or purchased, "is accessible to users with disabilities." *Distributed Solutions, Inc. v. United States,* 106 Fed.Cl. 1, 9 n.6 (2012), aff'd, 500 Fed.Appx. 955 (Fed.Cir.2013); *see also Allied Tech. Grp., Inc. v. United States,* 649 F.3d 1320, 1330 (Fed.Cir.), *reh'g en banc denied* (Fed. Cir.2011).

ample Blackboard, Moodle and De-sire2Learn. To program these cases, the Contractor will use a software package, or do "in-house" programming. One example of a software package that might be used is "Storyline."

The Contractor will proofread, edit, and program all case-based pain treatment scenarios. It will also advise and suggest ways to improve the cases, when applicable. The Contractor will coordinate patient advocacy group communications and input into these cases as directed by the NIH. The Contractor will assure that all materials to be web posted are 508 compliant, including the embedded videos. The Contractor will program all video closed captioning as mandated by HHS 508 compliance regulations. It will also involve communication with the CoEPEs to get materials and content needed to make the cases 508 compliant.[4]

The Contractor will program, format and code as needed to create the website on the NIH Pain Consortium page, as well as provide the graphics and content. The Contractor will work with the NIH to develop this page, and will be responsible for setting up any meetings, conference calls, online discussions, email discussions or any other communications on this topic. The Contractor will be responsible for minutes of any meetings when requested by the NIH. The Contractor will meet with the designated NIH Webmaster in advance of work to determine specifications needed.

The Contractor will receive, format and post supplementary materials associated with the cases, for example lesson plans and teaching packages to be used by educators. If these materials require NIH review, the Contractor will facilitate and document this review, and also ensure required changes are made to these materials.

*Task 4:*

The Contractor will also facilitate the evaluation of the impact of these training materials, and also facilitate both CoEPE and NIH Pain Consortium dissemination of the results of these evaluations. In collaboration with the CoEPEs, the Contractor will help determine the scope of the use of the materials in teaching setting [sic] both within and beyond the CoEPE network, and if the materials changed clinical practice and health care provider knowledge or perspective. To this end, the Contractor will plan and host teleconferences, maintain an interactive online collaboration site, and help organize various symposium with the NIH Pain Consortium and/or the CoEPEs. The Contractor may be asked to go to professional meetings and present their ongoing work, as well as support the presentations of NIH staff and/or CoEPE personnel. **FOR PROPOSAL PURPOSES**, please estimate the cost for attending these professional meetings at $2,000 per year.

*Task 5:*

As required under Task 4, the Contractor, on NIH's request, will organize teleconferences of representatives of the Pain Consortium and the CoEPES [sic]. The Contractor will summarize these meetings in writing. Summaries of these meetings will be posted on the collaboration site.

*Task 6:*

The videos to be used in the cases will be stored and accessed through YouTube. The Contractor will post all videos on YouTube on a special "CoEPE Channel" which it will help develop and maintain. It will also obtain, edit and post descriptions of these materials on YouTube so that content can be searched, and provide enough context where the YouTube videos will serve as teaching tools that can be viewed independent of the cases they support, and have educational value.

*Task 7:*

The Contractor, on NIH's request, will obtain additional content for cases previously submitted to the CoEPE program from CoEPEs that are no longer funded

---

4. The solicitation also indicated that, "[r]egardless of format, all Web content or communications materials specifically produced for publication on, or delivery via, HHS Web sites, including text, audio, or video, under this contract shall conform to applicable Section 508 accessibility standards," discussed in 36 C.F.R. Part 1194 (2013).

by this program, to enhance the quality of the case studies development based on these materials. This will facilitate the collaboration of no-longer funded CoEPEs with the newly funded CoEPEs. Further, in situations where a particular CoEPE that was previously funded receives further funding under this program, the Contractor, on NIH request, will obtain additional content for cases previously submitted to the CoEPE to enhance the quality of the case studies [sic] development based on these materials.

(capitalization and emphasis in original).

Although the statement of work for Task 3 indicated that the contractor would be responsible for facilitating the development of approximately twelve case-based scenarios per year, NIDA left open an option applicable to the base year and each option year, to have the contractor create up to eighteen more case-based scenarios, as needed by the government.

*D. Options for Increased Quantity* (each of the following options apply to the base contract year and each option year):

. . .

Upon exercise of the specified option(s) by the Contracting Officer, the Contractor shall perform tasks described in Task 3 for additional new case-based scenarios as specified below:

Option 1 (see Task 3, Case development): Create a case-based teaching module using the materials supplied by a specified CoEPE contract. This option may be exercised up to 18 times per contract year.

(emphasis in original).

Pursuant to Article C.2 of the solicitation, **"REPORTING REQUIREMENTS,"** the contractor awarded the project would have to submit, among other deliverables, periodic *"Technical Progress Reports,"* and, "upon the expiration date of the contract, all source code and object code developed, modified, and/or enhanced under this contract." (capitalization and emphasis in original). Under **"Other Reports/Deliverables,"** within Article C.2, the contractor would also be required to submit an **"IT [Information Technology] Security Plan"** and **"IT Risk Assessment"** within thirty days after contract award, as well as an **"IT Security Certification and Accreditation"** within three months after contract award. (emphasis in original). Moreover, pursuant to subsection H.8.E.5 of the solicitation, **"VULNERABILITY SCANNING REQUIREMENTS,"** because "[t]his acquisition requires the Contractor to host an NIH webpage or database," the contractor would have to "conduct periodic and special vulnerability scans, and install software/hardware patches and upgrades to protect automated federal information assets." (capitalization and emphasis in original).

The solicitation, at **"SECTION L—INSTRUCTIONS, CONDITIONS, AND NOTICES TO OFFERORS,"** subsection L.1.b, **"NOTICE OF SMALL BUSINESS SETASIDE,"** stated, "[o]fferors are solicited only from small business concerns." (capitalization and emphasis in original). The solicitation, under subsection L.1.c, **"NAICS CODE AND SIZE STANDARD,"** originally indicated, "[t]he North American Industry Classification System (NAICS) code for this acquisition is 541712," and "[t]he small business size standard is 500 employees." [5] (capitalization and emphasis in original). According to the 2012 NAICS list of definitions, provided in the administrative record, NAICS code 541712 is titled **"Research and Development in the Physical, Engineering, and Life Sciences (except Biotechnology)."** (emphasis in original). The "maximum" number of employees "allowed for a concern and its affiliates to be considered small" under NAICS code 541712 is 500 employees. *See* 13 C.F.R. § 121.201. Protestor asserts in its complaint

---

5. Contained in the administrative record is a three-page notice discussing the solicitation, issued by Kenneth E. Goodling, the contracting officer for the solicitation at issue, who worked in the NIDA R&D Contracts Management Branch. The first page of the notice states:

THIS IS A 100 PERCENT SET–ASIDE FOR SMALL BUSINESS. **Proposals received from** **firms that are not small business concerns, as defined by the North American Industry Classification System (NAICS) code, are not eligible for award. The NAICS code applicable to this buy is 541712. See Section L.1.c. of this RFP.**

(capitalization and emphasis in original).

that it intended to submit a proposal in response to the solicitation, and that it would have been eligible to do so under the NAICS code selected for the original solicitation, NAICS code 541712, as "[t]his NAICS code allowed any small business with fewer than 500 employees to be eligible to compete."

In Amendment 2 to the solicitation, issued March 21, 2014, the agency answered questions posed by potential offerors, but did not amend the text or requirements of the solicitation. In Amendment 2, the agency addressed a series of questions about the work involved to produce the case-based scenarios. A potential offeror asked if the agency could "point to examples of e-learning units online that reflect the length (learner seat time), degree of interactivity, and level of graphic design that NIH envisions for the Interactive Case Scenarios." The agency replied that, "[w]hile the scenarios will be developed on an individual basis, NIDA anticipates the cases will consist of about 50–70 pages, and about 10–20 minutes of imbedded videos. We are not modeling these off of any particular design currently on the web." In response to a related question, the agency stated: "NIDA anticipates the average length of these interactive case scenarios will be approximately 45 minutes." The agency indicated, however, in response to questions from potential offerors, that "[p]resentations are the responsibility of the CoEPEs and NIH staff," as well as that "[t]he lesson plans, and teaching packages will be developed by the CoEPE's [sic]." The agency also stated, in response to a question, that narration and graphics for the case-based scenarios will be provided by the CoEPEs, and that "[t]he development, filming, and editing of the videos will not be done by the Coordination Center. The Coordination Center is only responsible for captioning, formatting for 508 compliance, and incorporating the video into the interactive modules."

Potential offerors also asked a series of questions about the contractor's obligations under the solicitation with regards to "analysis, reporting, and dissemination" of the interactive case-based scenarios, including:

[Question] What responsibility will the contractor have for analysis, reporting, and dissemination of the results of evaluation of the impact of the training materials?

**Answer:** The contractor will not be responsible for conducting the evaluations. The major responsibility of dissemination lies with the CoEPEs. Any participation in dissemination by the Coordination Center will be minor and rare. NIDA may ask the coordination center to host a few short teleconferences with the CoEPEs collaborating on a particular dissemination project.

(emphasis in original). The agency stated, however, that the "Coordination Center will be responsible for all aspects of the conference call[s]" associated with presenting or disseminating information related to the case-based scenarios.

The agency additionally addressed a question from a potential offeror about the breakdown of work hours:

[Question] Please provide added information to differentiate the scenarios vs. modules. Does the annual estimate of 3320 hours include the effort for the 12 scenarios in Task 3, or is the effort for the scenarios separate, i.e. part of the 360 hours for each of the Task 7 options?

**Answer:** All of the work for the base period of the contract (Tasks 1–7) is included in the 3,220 direct labor hours. The option quantity for each additional case scenario [under Task 3] is estimated at 360 direct labor hours.

(internal citation omitted; emphasis in original).

Furthermore, the agency addressed two questions posed by potential offerors seeking clarification of the website deliverables required in Tasks 2, 3, and 4. The first question asked:

[Question] Task 2 indicates that the Contractor will host an online communication portal. Task 3 indicates that the Contractor will program, format and code to create a website on the NIH Pain Consortium page. To clarify, does the Government intend for the development of two independent websites: a communication portal for collaboration with CoEPEs and a site on the NIH Pain Consortium page for sharing

completed training resources? Does the Government intend for the communication portal to be accessible via the NIH Pain Consortium page?

Answer: The site on the pain consortium webpage is for sharing the resources and is open to the public. The second site is for communication between the CoEPEs and the NIH, is not open to the public, and will not be linked to for the public page. The communication portal can be programed, but there are many commercially available products to do this, and their use is acceptable for this purpose.

(emphasis in original). The second question asked:

[Question] Task 4 indicates that the Contractor is to maintain an interactive online collaboration site. Does the Government intend for the collaboration site to be the same as the online communication portal referenced in Task 2? Does this site need to be accessible to the public (i.e., sites beyond the CoEPE network who participate in the dissemination evaluation)?

Answer: Yes, the government intends for the collaboration site to be the same as the online communication portal.

(emphasis in original).

Prior to the issuance of Amendment 2, on March 10, 2014, one of the potential offerors to the solicitation, Information Ventures, Inc. (Information Ventures), filed an appeal with the Small Business Administration Office of Hearings and Appeals, challenging the use of NAICS code 541712, "Research and Development in the Physical, Engineering, and Life Sciences (except Biotechnology)." The Office of Hearings and Appeals issued a *"NOTICE AND ORDER"* the same day, stating that "[t]he Office of Hearings and Appeals (OHA) hereby notifies all currently known parties, all prospective offerors, and other persons that an appeal of the North American Industry Classification System (NAICS) code designated in the above-captioned solicitation was filed on March 10, 2014." (capitalization and emphasis in original). On March 11, 2014, NIDA issued Amendment 1 to the solicitation "[t]o notify all potential offerors" of the appeal at the Small Business Adminis-

tration Office of Hearings and Appeals, but no changes to the solicitation were indicated in the amendment. Information Ventures asserted in its appeal to the Small Business Administration that the NAICS code applied to the solicitation at that time, NAICS code 541712, "Research and Development in the Physical, Engineering, and Life Sciences (except Biotechnology)," was inappropriate, as "the contractor here must perform seven tasks unrelated to Research and Development." Information Ventures alleged that NAICS code 541611, "Administrative Management and General Management Consulting Services," "corresponds closely with the services NIDA seeks to procure here." Information Ventures maintained that Task 1 involves creating "monthly progress reports," and is an administrative consulting service, as is Task 2, which, according to Information Ventures, "requires the Contractor to maintain, host and manage an interactive online communication portal for the NIH, Contractor and CoEPEs to use." Information Ventures also claimed:

The contractor's facilitation, development, dissemination, and meeting duties under Task 3 are entirely administrative services. While formatting/coding as needed a website page and creating 508 compliant provided materials with graphics/embedded videos is an information technology function, it is also part administration and the task amounts to few hours compared to the whole.

Information Ventures also asserted that Tasks 4 through 7, regarding dissemination and presentation of research results, posting materials on YouTube, and obtaining additional content, "are properly categorized as administrative management consulting services such as are covered by NAICS code 541611." Information Ventures further stated:

In addition, the solicitation provides that key personnel, consultants, and any subcontractors are to be evaluated for appropriateness of credentials, training, qualifications, experience, and competence to carry out the project. These are qualifications related to performing administrative and consulting functions in overseeing con-

tract performance. Basic credentials identified in the solicitation are largely administrative and consulting functions such as ability to coordinate complex projects and demonstrated ability to create or facilitate creation of online teaching modules.

On behalf of NIDA, contracting officer Kenneth Goodling filed a **"Substantive Response to the Appeal"** on March 20, 2014, in which the contracting officer maintained, "that the North American Industry Classification System (NAICS) code 541712 for Research and Development in the Physical, Engineering, and Life Sciences is the proper NAICS designation for this requirement." (emphasis in original). In his response, the contracting officer provided additional explanation about the nature of the procurement, stating:

> The primary purpose of the solicited contract and the majority of the anticipated cost of the contract will be in the implementation of Task 3 of the Statement of Work. The Contractor will use materials researched and submitted by the CoEPEs to develop the online case-scenarios. Further, the Contractor will perform additional research, program, format and code as needed to develop the website on the NIH Pain Consortium page for research support in disseminating health based information.

The contracting officer also stated that, "[u]nder Task 3 the contractor will develop a website on the NIH Pain Consortium webpage," and that "[n]o previous case-based scenario modules have been fully developed, and no website to host the case-based scenarios has been created. Therefore, the Contractor will be responsible for the R&D [Research & Development] creation of the two predominant products in the contract." The contracting officer also noted that the NAICS code suggested by Information Ventures, NAICS code 541611, was "seemingly without consideration to the predominant cost or to a reasonable determination of the primary purpose of the tasks and its relation to the primary purpose of the contract." The contracting officer then discussed the other solicitation Tasks:

The Appellant [Information Ventures] argues that the requirements in Task 1 and Task 2 fall directly under the category of administrative management and general management consulting services. In Task 1 the contractor is tasked with creating monthly progress reports which is a standard practice within many R & D contracts in order for the Government personnel to be kept informed of a contractor's current progress. In Task 2 the contractor is required to maintain, host and manage an interactive online communication portal for the Government, Contractor and CoEPEs to coordinate research activities in developing the case-based scenarios. See Page 7 of RFP N01DA–14–4423. This communication portal is necessary to complete the work in Task 3 by facilitating communication between the Coordination Center, the Government, and the CoEPE's [sic]. However, the first two tasks are not the principal purpose of the contract, nor do they account for the greatest percentage of contract costs. As previously stated, the primary purpose and greatest percentage of contract costs will occur under Task 3, where the contractor will be creating both the case-based scenario modules from the raw materials provided by the CoEPEs, and the website that will host the case-based scenarios. While there may be some administrative tasks included within Task 3, such as hosting conference calls, these tasks are extremely minor in terms of overall costs and are done in the furtherance of the development of the case-based scenarios and the website to disseminate them.

In his filing to the Small Business Administration Office of Hearings and Appeals, the contracting officer also stated that Tasks 4 and 5, "will take place through conference calls and have minimal impact on the cost of the contract." Furthermore, according to Mr. Goodling, "Task 6 will require the Contractor to post all videos on a YouTube channel that it will help to create. Much like the Task 1, 2, 4, and 5, this task is for disseminating information created during the Task 3 process," "will not require great expense and is ancillary to the primary requirements of Task 3." The contracting officer continued:

"Task 7 is directly related to the contractor's primary duty under Task 3 to research, create and develop case-based scenarios." The contracting officer concluded his response to the Office of Hearings and Appeals by asserting that "the development of the case-based scenario modules as a new product by the Contractor is the predominant purpose of the contract," and that the other Tasks "are ancillary and in support of the predominant purpose and greatest anticipated percentage of costs for the subject contract, the development and creation the [sic] case-based scenarios and the website to host them."

An Office of Hearings and Appeals judge issued a brief decision on April 2, 2014. The Office of Hearings and Appeals judge concluded: "I must agree with Appellant that the instant procurement does not call for research and development. As a result, the CO [contracting officer] clearly erred in assigning NAICS code 541712." *Info. Ventures, Inc.*, SBA No. NAICS–5544, 2014 WL 1395651, at *5 (Apr. 2, 2014). The Office of Hearings and Appeals judge continued:

> According to the RFP, the contractor will serve as a "Coordination Center," facilitating interactions between the CoEPEs and NIH, and overseeing the manner in which information is conveyed to, and reviewed by, NIH. The RFP does not indicate that the contractor will conduct research into pain treatment, or that the contractor will participate directly in any research conducted by the CoEPEs and/or by NIH. Significantly, the RFP does not call for the contractor to perform any laboratory or experimental work. Nor does the RFP require the contractor to have expertise in the treatment of pain, or to provide personnel with medical or scientific backgrounds. Instead, the RFP's evaluation criteria emphasize much more general qualifications, such as the "ability to coordinate complex projects." Thus, the contractor appears to have little, if any, substantive role in any research.

*Id.* (internal citations omitted). The Office of Hearings and Appeals judge cited *Bevilacqua Research Corp.*, SBA No. NAICS–5243, 2011 WL 2436620 (June 2, 2011), for the general principle that the "mere fact that the

contractor will provide assistance to a research organization is not sufficient to justify classifying the procurement as research and development." *See Info. Ventures, Inc.*, 2014 WL 1395651, at *5. The Office of Hearings and Appeals judge did not find compelling the contracting officer's argument that the interactive scenarios the contractor would have to develop and disseminate pursuant to the solicitation qualified as research and development. *See id.* at *5–6. Instead, the Office of Hearings and Appeals judge held that the Small Business Administration's regulations restrict "'research and development'" to mean "'laboratory or other physical research and development,'" and not "'computer programming,'" "'nonphysical research,'" or "information technology functions." *See id.* at *6 (quoting 13 C.F.R. § 121.201 n.11(a)). The Office of Hearings and Appeals judge stated: "Thus, in creating the scenarios, the contractor essentially will perform information technology functions...." *Id.*

The Office of Hearings and Appeals judge continued: "Because Appellant has demonstrated that the CO erred in assigning NAICS code 541712, I must consider which NAICS code best describes the principal purpose of the acquisition." *Id.* at *7 (citing 13 C.F.R. § 121.402(b) (2014)). The Office of Hearings and Appeals judge adopted Information Ventures' suggested NAICS code and held that "NAICS code 541611 is most appropriate here." *Id.* Without much comment on the most appropriate NAICS code, the Office of Hearings and Appeals judge commented: "In prior cases, OHA has affirmed the use of NAICS code 541611 in situations where a contractor will 'assist[ ] with the administration and management' of an important program." *Id.* (quoting *CHP Int'l, Inc.*, SBA No. NAICS–5367, 2012 WL 3000372, at *4 (June 21, 2012), and citing *ALON, Inc.*, SBA No. NAICS–5148, 2010 WL 3313557 (Aug. 2, 2010)) (modification in original). The Office of Hearings and Appeals judge further stated: "The instant contractor will perform precisely such work, acting as the 'Coordination Center,' assisting with administrative matters, and managing communications and interactions between NIH and the CoEPEs." *Id.* Although not

based on any comment by the contracting officer, the Office of Hearings and Appeals judge also stated that the contracting officer "does not dispute Appellant's assertion that NIH has previously used NAICS code 541611 for similar procurements." Moreover, the Office of Hearings and Appeals judge did not specify which procurements or how he came to this conclusion. *See id.* The Office of Hearings and Appeals judge also wrote that the contracting officer "concedes that 'several tasks enumerated in the [RFP] could fall under the 541611 NAICS code.'" *Id.*[6] (modification in original). The Office of Hearings and Appeals judge further indicated that "because this decision is being issued before the close of the solicitation, the CO MUST amend the RFP to change the NAICS code designation from 541712 to 541611," citing 48 C.F.R. § (Federal Acquisitions Regulations, or FAR) 19.303(c)(5), and *Eagle Home Med. Corp.,* B–402387, 2010 WL 1213819 (Comp.Gen. March 29, 2010). *See Info. Ventures, Inc.,* 2014 WL 1395651, at *7 (capitalization in original). The Office of Hearings and Appeals judge concluded: "This is the final decision of the Small Business Administration." *Id.* (citing 13 C.F.R. § 134.316(d) (2014)).

On April 4, 2014, two days after the *Information Ventures* decision was issued by the Small Business Administration Office of Hearings and Appeals, the contracting officer issued Amendment 3 to the solicitation, changing the NAICS code from 541712 to 541611, for "Administrative Management and General Management Consulting Services." On April 8, 2014, NIDA issued Amendment 4 to the solicitation, extending the due date for offers from April 15, 2014 to April 22, 2014. The solicitation, under the new NAICS code, limited the pool of potential offerors to those with $14.0 million or less in annual receipts. *See* 13 C.F.R. § 121.201.

On April 14, 2014, Palladian filed its appeal at Office of Hearings and Appeals, challenging the contracting officer's re-classification

of the solicitation under NAICS code 541611. The Office of Hearings and Appeals provided its notice of the appeal on April 15, 2014, and on April 16, 2014, the contracting officer issued Amendment 5 to the solicitation, "[t]o notify all potential offerors" of the appeal by Palladian. Thereafter, Amendments 6 and 7 to the solicitation, issued by the contracting officer on April 21, 2014 and April 23, 2014, respectively, extended the deadline for offers to May 13, 2014, and then to May 16, 2014.

In its April 14, 2014 appeal to the Office of Hearings and Appeals, Palladian alleged that NAICS code 541611, "Administrative Management and General Management Consulting Services," is the incorrect code for the solicitation, as "[t]he Solicitation does not call for advisory or consulting services as contemplated by that code." Palladian did not defend the use of the original NAICS code 541712, "Research and Development in the Physical, Engineering, and Life Sciences (except Biotechnology)," but, instead, asserted NAICS code 519130, "Internet Publishing and Broadcasting and Web Search Portals," as the correct NAICS code which should be used for the solicitation. Protestor maintained at the Office of Hearings and Appeals that the solicitation "calls for the creation and publication of content on the Internet consistent with NAICS code 519130." Palladian contended that the Small Business Administration Office of Hearings and Appeals judge previously had failed to conduct a comprehensive search of alternative NAICS code options, but instead simply had accepted the NAICS code the appellant, Information Ventures, proposed in its March 10, 2014 appeal, without considering other alternatives. Palladian stated that the "OHA must review *all possible NAICS codes* to determine which 'best describes the principal purpose of the products being acquired.'" (quoting 13 C.F.R. § 121.402(b)) (emphasis in original). Palladian asserted that if the solicitation were amended to be under NAICS code 519130, Palladian would be allowed to submit

---

**6.** The Office of Hearings and Appeals judge, however, did acknowledge the contracting officer's statement: "While several tasks enumerated in the Statement of Work could fall under the 541611 NAICS code, these tasks fail to overcome

the Appellants [sic] burden of showing that these tasks represent the predominant purpose of the contract and the greatest percentage of costs in the contract."

a proposal, as the size standard limit for NAICS code 519130 is 500 employees, without any revenue ceiling. *See* 13 C.F.R. § 121.201.

On May 7, 2014, the same Small Business Administration Office of Hearings and Appeals judge who had decided the earlier March 10, 2014 NAICS code appeal regarding solicitation N01DA–14–4423 filed by Information Ventures, dismissed Palladian's appeal. The Office of Hearings and Appeals judge declined to revisit his past decision, although filed as a subsequent and separate appeal to the inclusion of NAICS code 541611 by Palladian, and not as a motion for reconsideration of the earlier decision which contested the original inclusion of NAICS code 541712 in the solicitation. The Office of Hearings and Appeals judge dismissed Palladian's appeal, citing principles of *res judicata* and issue preclusion. *See Palladian Partners, Inc.*, SBA No. NAICS–5553, 2014 WL 1924608, at *5–6 (May 7, 2014). The Office of Hearings and Appeals judge concluded:

> I find that, under the doctrine of issue preclusion, Appellant and Rho[7] are barred from relitigating issues already decided in *NAICS Appeal of Information Ventures, Inc.*, SBA No. NAICS–5544 (2014). The issue in that case was identical to the one presented here: *i.e.*, which NAICS code is appropriate for RFP No. N01 DA–14–4423.... Thus, as Rho acknowledges in its response to this appeal, the parties had a full and fair opportunity to intervene in *Information Ventures*, yet failed to do so. I find therefore that if Appellant and Rho wished to litigate the issue of what NAICS code should apply to this RFP, they could, and should, have intervened in *Information Ventures*.

*Palladian Partners, Inc.*, 2014 WL 1924608, at *6. The Office of Hearings and Appeals judge stated that "the regulations specifically preclude reconsideration of a NAICS code decision. 13 C.F.R. § 134.316(f) ('The decision in a NAICS code appeal may not be reconsidered.')." *Palladian Partners, Inc.*, 2014 WL 1924608, at *6. In a footnote, the Office of Hearings and Appeals judge noted

that in the past, the United States Court of Federal Claims "found that OHA improperly dismissed a NAICS code appeal ... because the plaintiff received no notice that a competing offeror had filed a NAICS code appeal." *Id.* at *6 n. 4 (citing *Advanced Sys. Tech., Inc. v. United States*, 69 Fed.Cl. 474 (2006)). The Office of Hearings and Appeals judge determined that Palladian's appeal was distinguishable in this instance, because the "prospective offerors were notified of IVI's appeal through Amendment 1 to the RFP, and chose not to participate." *Id.*

The Office of Hearings and Appeals judge also tried to respond to Palladian's argument that the Office of Hearings and Appeals should have done more to search through other potential NAICS codes, stating:

> While it is true that OHA has, in some instances, selected a NAICS code other than those advanced by the parties, OHA typically has done so only after considering the codes actually argued by the litigants. Thus, in situations such as *Information Ventures*, where OHA agrees that a code advocated by a party is most appropriate, there is no logical reason to proceed with a discussion of other, less appropriate codes. Nor would it be practicable to specifically comment in the text of a decision on every NAICS code theoretically applicable to a procurement.

*Id.* at *6 (citation omitted). As noted, the Office of Hearings and Appeals judge confirmed his earlier decision and concluded, "the instant appeal is DISMISSED. This is the final decision of the Small Business Administration. *See* 13 C.F.R. § 134.316(d)." *Palladian Partners, Inc.*, 2014 WL 1924608, at *7 (capitalization in original).

Prior to the May 7, 2014 decision by the Small Business Administration Office of Hearings and Appeals, protestor filed a pre-award bid protest in this court on April 21, 2014. Protestor alleges that the "Contracting Officer's decision" to amend the solicitation to be under NAICS code 541611, "Administrative Management and General Management Consulting Services," following the Small Business Administration's order

7. Rho Federal Systems Division, Inc., another potential offeror to the NIDA solicitation

N01DA–14–4423, "intervened and responded to the instant appeal."

to do so, was "arbitrary, capricious, an abuse of discretion, and lacks a rational basis." Protestor contends that, "'[f]or size standard purposes, a product or service shall be classified in only one industry, whose definition *best describes* the principal nature of the product or service being acquired even though for other purposes it could be classified in more than one.'" (quoting FAR 19.102(c) (2013)) (emphasis in original). Protestor alleges that NIDA should have selected NAICS code 519130, "Internet Publishing and Broadcasting and Web Search Portals," and that the failure to do so "was arbitrary and capricious, an abuse of discretion and contrary to law." Protestor argues that "the narrative description of NAICS code 519130, Internet Publishing and Broadcasting and Web Search Portals, along with its Index Entries closely correspond to the principal purpose of the Solicitation, creation of a publishing website." Protestor states that it "would be eligible to bid as a small business under the proper NAICS code: 519130."

In this court, protestor seeks declaratory and injunctive relief. Specifically, Palladian seeks (1) a finding that NIDA's use of NAICS code 541611 was improper, (2) a finding that NAICS code 519130 best describes the solicitation's purpose, (3) an injunction against NIDA from accepting bids under the solicitation unless and until an appropriate NAICS code is selected, and (4) any other relief the court determines is warranted. The parties filed expedited motions for judgment on the administrative record and oral argument was held. As indicated above, on May 15, 2014, the court issued an oral decision finding the contracting officer's amendment of the solicitation to be under NAICS code 541611 arbitrary and capricious. The court also issued a preliminary injunction against NIDA from proceeding with the solicitation under NAICS code 541611.

## DISCUSSION

Pursuant to Rule 52.1(c) of the Rules of the United States Court of Federal Claims (RCFC) (2013), which governs motions for judgment on the administrative record, the court's inquiry is directed to "'whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" *Mgmt. & Training Corp. v. United States,* 115 Fed.Cl. 26, 40 (2014) (quoting *A & D Fire Prot., Inc. v. United States,* 72 Fed.Cl. 126, 131 (2006) (citing *Bannum, Inc. v. United States,* 404 F.3d 1346, 1356–57 (2005))); *see also Eco Tour Adventures, Inc. v. United States,* 114 Fed.Cl. 6, 21 (2013); *DMS All–Star Joint Venture v. United States,* 90 Fed.Cl. 653, 661 (2010).

*Jurisdiction and Standing*

It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (quoting *United States v. Cotton,* 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki,* 562 U.S. 428, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011); *see also Hertz Corp. v. Friend,* 559 U.S. 77, 94, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing *Arbaugh v. Y & H Corp.,* 546 U.S. at 514, 126 S.Ct. 1235)); *Special Devices, Inc. v. OEA, Inc.,* 269 F.3d 1340, 1342 (Fed.Cir.2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing *Johannsen v. Pay Less Drug Stores N.W., Inc.,* 918 F.2d 160, 161 (Fed.Cir.1990))); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 115 F.3d 962, 963 (Fed.Cir.1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "The objection that a federal court lacks subject-matter jurisdiction ... may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.,* 546 U.S. at 506, 126 S.Ct. 1235; *see also Cent. Pines Land Co., L.L.C. v. United States,* 697 F.3d 1360, 1364 n. 1 (Fed.Cir.2012) ("An ob-

jection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing *Arbaugh v. Y & H Corp.*, 546 U.S. at 506, 126 S.Ct. 1235)); *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1346 (Fed.Cir.2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing *Arbaugh v. Y & H Corp.*, 546 U.S. at 506, 126 S.Ct. 1235; *Folden v. United States*, 379 F.3d 1344, 1354 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2004), *cert. denied*, 545 U.S. 1127, 125 S.Ct. 2935, 162 L.Ed.2d 865 (2005); and *Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 720 (Fed.Cir.1998))); *Pikulin v. United States*, 97 Fed.Cl. 71, 76, *appeal dismissed*, 425 Fed.Appx. 902 (Fed.Cir.2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise *sua sponte*, even where . . . neither party has raised this issue." *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1369 (Fed. Cir.) (citing *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1485 (Fed.Cir.), *reh'g denied and en banc suggestion declined* (Fed.Cir.1998)), *reh'g and reh'g en banc denied* (Fed.Cir.2004), *cert. granted in part*, 546 U.S. 975, 126 S.Ct. 543, 163 L.Ed.2d 458 (2005), *cert. dismissed as improvidently granted*, 548 U.S. 124, 126 S.Ct. 2921, 165 L.Ed.2d 399 (2006).

The Administrative Dispute Resolution Act of 1996 (ADRA), Pub.L. No. 104–320, §§ 12(a), 12(b), 110 Stat. 3870, 3874 (1996) (codified at 28 U.S.C. § 1491(b)(1)–(4) (2012)), amended the Tucker Act to establish a statutory basis for bid protests in the United States Court of Federal Claims. *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1330–32 (Fed.Cir.2001). The statute provides that protests of agency procurement decisions are to be reviewed under Administrative Procedure Act (APA) standards, making applicable the standards outlined in *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir. 1970), and the line of cases following that decision. *See, e.g., Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1242 (Fed.Cir.2010) ("Following passage of the APA in 1946, the District of Columbia Circuit

in *Scanwell Labs., Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970), held that challenges to awards of government contracts were reviewable in federal district courts pursuant to the judicial review provisions of the APA."); *Galen Med. Assocs., Inc. v. United States*, 369 F.3d at 1329 (citing to *Scanwell Laboratories, Inc. v. Shaffer* for its reasoning that "suits challenging the award process are in the public interest and disappointed bidders are the parties with an incentive to enforce the law"); *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed.Cir. 2004) ("Under the APA standard as applied in the *Scanwell* line of cases, and now in ADRA cases, 'a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.' " (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d at 1332)); *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2003). The United States Court of Appeals for the Federal Circuit has stated that the Court of Federal Claims' jurisdiction over "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement," 28 U.S.C. § 1491(b)(1), "provides a broad grant of jurisdiction because '[p]rocurement includes *all stages of the process of acquiring property or services*, beginning with the process for determining a need for property or services and ending with contract completion and closeout.' " *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1381 (Fed.Cir.2012) (emphasis in original) (quoting *Res. Conservation Grp., LLC v. United States*, 597 F.3d at 1244); *see also Rockies Exp. Pipeline LLC v. Salazar*, 730 F.3d 1330, 1336 (Fed.Cir.2013), *reh'g denied* (Fed.Cir. 2014); *Distributed Solutions, Inc. v. United States*, 539 F.3d 1340, 1345 (Fed.Cir.) ("[T]he phrase, 'in connection with a procurement or proposed procurement,' by definition involves a connection with any stage of the federal contracting acquisition process, including 'the process for determining a need for property or services.' "), *reh'g denied* (Fed.Cir.2008); *RAMCOR Servs. Grp., Inc. v. United States*, 185 F.3d 1286, 1289 (Fed.Cir.1999) ("The op-

erative phrase 'in connection with' is very sweeping in scope.").

In the above captioned pre-award bid protest, the contracting officer amended the solicitation on April 4, 2014, to change the NAICS code from NAICS code 541712 to 541611, following the Small Business Administration Office of Hearings and Appeals decision, SBA No. NAICS–5544 in the *Information Ventures* appeal. Protestor contends that both the agency's amendment, and the Office of Hearings and Appeals' order directing that amendment, "are actions 'in connection with a proposed procurement' that lacked a rational basis and were contrary to applicable regulatory requirements." (quoting *InGenesis, Inc. v. United States,* 104 Fed.Cl. 43, 48 (2012)). Protestor contends that even if it was the Small Business Administration Office of Hearings and Appeals that directed the contracting officer to change the NAICS code used in the solicitation, "[t]he statutes defining the Court's bid protest jurisdiction do not include express or implied limitations on the Court's jurisdiction based on the process by which the alleged violations occurred." Defendant, during the April 22, 2014 hearing before this court, initially contended that there may be an issue with the court's jurisdiction over this case; in its April 30, 2014 motion for judgment on the administrative record, however, defendant conceded jurisdiction, stating that a " 'contracting officer's NAICS designation is made "in connection with" a proposed procurement' and 'the SBA [Small Business Administration] OHA's decision is similarly "in connection with" a proposed procurement,' " quoting from *InGenesis, Inc. v. United States,* 104 Fed.Cl. at 48 (other citation omitted). At the May 6, 2014 hearing before this court, defendant again stated that it conceded jurisdiction: "We concede the Court—under existing precedent, the Court has jurisdiction."

 In its motion for judgment on the administrative record, defendant argues, "[b]ecause the contracting officer was required by 13 C.F.R. § 134.318(b) to amend the solicitation to reflect the NAICS code that OHA determined should be assigned to it, the resolution of this issue is simple: the contracting officer had no discretion in this

instance." Protestor, however, brings its claim under 28 U.S.C § 1491(b)(1), " 'objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract' " and challenging the " 'alleged violation of statute or regulation in connection with a procurement.' " (quoting 28 U.S.C. § 1491(b)(1)). Protestor claims that it "was rendered ineligible to compete when NIDA amended the Solicitation to use NAICS code 541611, Administrative Management and General Management Consulting Services . . . ." As noted by the United States Court of Appeals for the Federal Circuit, this court has the authority to review " '*all stages of the process of acquiring property or services.*' " *See Sys. Application & Techs., Inc. v. United States,* 691 F.3d at 1381 (emphasis in original) (quoting *Res. Conservation Grp., LLC v. United States,* 597 F.3d at 1244); *see also RAMCOR Servs. Grp., Inc. v. United States,* 185 F.3d at 1289 ("The operative phrase 'in connection with' is very sweeping in scope."). The United States Court of Federal Claims has a "virtually unflagging obligation" to exercise the jurisdiction available to it. *See Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817–18, 96 S.Ct. 1236, 47 L.Ed.2d 483, *reh'g denied,* 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976); *Cherokee Nation of Okla. v. United States,* 124 F.3d 1413, 1418 (Fed.Cir.1997); *Consolidation Coal Co. v. United States,* 102 Fed.Cl. 489, 493 (2011); *Hage v. United States,* 35 Fed.Cl. 147, 160 (1996). The court, therefore, has jurisdiction to review the contracting officer's decision to amend the NAICS code applicable to the solicitation to determine if the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A) (2012); *see also* 28 U.S.C. § 1491(b)(1), (b)(4).

Under the FAR, procurement decisions, and the fair treatment of potential contractors are the responsibility of the contracting officer. *See* FAR 1.102–4(a) (2013) ("In particular, the contracting officer must have the authority to the maximum extent practicable and consistent with law, to determine the application of rules, regulations, and policies, on a specific contract."); FAR 1.602–2 (2013) ("Contracting officers are responsible for en-

suring performance of all necessary actions for effective contracting, ensuring compliance with the terms of the contract, and safeguarding the interests of the United States in its contractual relationships."); FAR 1.602–2(b) (Contracting officers shall "[e]nsure that contractors receive impartial, fair, and equitable treatment."); *see also OSG Prod. Tankers LLC v. United States*, 82 Fed. Cl. 570, 574 (2008) ("Contracting officers are responsible for ensuring that government contracting programs run effectively."); *Hunt Bldg. Co., Ltd. v. United States*, 61 Fed.Cl. 243, 273 (2004) ("As the Federal Circuit recognized, '[t]he government is said to breach the implied contract if its consideration of offers is found to be arbitrary and capricious toward the bidder-claimant.'" (quoting *Southfork Sys., Inc. v. United States*, 141 F.3d 1124, 1132 (Fed.Cir.1998) (citation omitted))). The FAR, as well as the Small Business Administration's regulations, require that NIDA select the NAICS code which "best describes the principal nature of the product or service being acquired." *See* FAR 19.102(b)(1), (d); *see also* 13 C.F.R. § 121.402(b) (requiring contracting officers to select "the single NAICS code which best describes the principal purpose of the product or service being acquired"). The contracting officer, therefore, is not shielded from judicial review of his or her choices of what to include in a solicitation and whether such choices are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 5 U.S.C. § 706(2)(A). As discussed further below, in the above captioned pre-award bid protest, the contracting officer chose to amend the solicitation to be under the NAICS code suggested by the Small Business Administration Office of Hearings and Appeals, rather than exercise his discretion to select the NAICS code which most accurately reflects the solicitation's statement of work.

Protestor acknowledged at the May 6, 2014 hearing that the United States Court of Appeals for the Federal Circuit has yet to clarify how this court's bid protest jurisdiction interacts with the Small Business Administration's NAICS code review responsibilities. Defendant added at the same May 6, 2014 hearing, "we would agree that it hasn't been decided at the Circuit." In at least a few instances, however, judges of the United States Court of Federal Claims have found jurisdiction to review a contracting officer's decision under 28 U.S.C. § 1491(b)(1), even when the Small Business Administration has spoken to the applicable NAICS code. In *Red River Service Corp. v. United States*, the United States Air Force issued a small business solicitation under NAICS code 811212, "Computer and Office Machine Repair and Maintenance." *See Red River Serv. Corp. v. United States*, 60 Fed.Cl. 532, 533–34, *appeal dismissed*, 110 Fed.Appx. 887 (Fed.Cir.2004). Red River was ineligible to compete for the solicitation under the particular NAICS code selected for the procurement, and filed an appeal with the Small Business Administration Office of Hearings and Appeals challenging the chosen NAICS code. *See id.* at 534–35, 540. After an Office of Hearings and Appeals judge declined to instruct the United States Air Force to choose a different NAICS code, Red River filed a pre-award bid protest in this court, seeking "'preliminary injunctive relief to enjoin the [Air Force] from proceeding with receiving proposals pending final resolution of this matter,' and declaratory relief 'providing that the proper NAICS code for this procurement is NAICS 517110.'" *See id.* at 535 (internal citations omitted; modification in original). A judge of this court found no jurisdiction in *Red River* to review the Small Business Administration's final determination. *See id.* at 537–38 ("The court can find no statutory authority that provides the court with jurisdiction to review final decisions of the SBA, unless the agency is party to a contract or solicitation at issue. *See* Contract Disputes Act, 41 U.S.C. §§ 601 *et seq.*"). The *Red River* court, nonetheless, found jurisdiction to proceed to the merits under the Tucker Act, since it was also the United States Air Force's decision to adopt the particular NAICS code. The *Red River* court stated:

> On the other hand, the court has found no statutory authority that immunizes a Contracting Officer's NAICS Code selection from review under the Tucker Act, utilizing the APA standard of review.

Accordingly, the court will exercise its Tucker Act jurisdiction in this case solely to review the Air Force CO's selection of NAICS Code 811212 regarding Solicitation FA8773–04–R–0001. In doing so, the court [sic] actions are consistent with congressional rationale for amending the Tucker Act to extend bid protest jurisdiction based on an implied-in-fact contract, which in this case is with the Air Force, not the SBA.

*Id.* at 538. The judge in *Red River* found "the Air Force CO's selection of NAICS Code 811212 did not comply with 48 C.F.R. § 19.102(b)(1), which requires the NAICS code selected to 'best describ[e] the principal nature of the ... service being acquired[.]' 48 C.F.R. § 19.102(b)(1)." *Id.* at 545 (modifications in original). The judge, therefore, set aside the solicitation "unless and until NAICS Code 811212, 'Computer and Office Machine Repair and Maintenance,' is changed." *See id.* at 550. More recently, another judge of this court also held that this court has jurisdiction over an agency's selection of a NAICS code, in a similar fact pattern to that in *Red River.* In *InGenesis, Inc. v. United States*, a contractor was prohibited from participating in a small business procurement under the NAICS code and size standard chosen by the agency, and filed a pre-award bid protest in the United States Court of Federal Claims after a failed appeal to the Small Business Administration Office of Hearings and Appeals. *See InGenesis, Inc. v. United States*, 104 Fed.Cl. at 46. In *InGenesis*, this court found bid-protest jurisdiction under the Tucker Act to review the

contracting officer's NAICS code determination, under the theory that a "contracting officer's NAICS code designation is made 'in connection with' a proposed procurement." *See id.* at 48 (citing 28 U.S.C. § 1491(b)(1)).[8]

Defendant contends that this court should not reach the merits of protestor's claims because protestor failed to exhaust its administrative remedies at the Small Business Administration before filing its pre-award bid protest. According to defendant, "[b]y not participating in the IVI [Information Ventures] appeal, Palladian failed to exhaust its administrative remedies." Defendant cites to 13 C.F.R. § 121.1102 (2014), which states that, "[t]he OHA appeal is an administrative remedy that must be exhausted before judicial review of a NAICS code designation may be sought in a court." Defendant further maintains that "Palladian did not participate in the administrative process when it was on notice that the designated code was being appealed by a competitor," and therefore, "should have presented its arguments regarding the appropriate code designation at that time." In response, protestor argues that the question of whether Palladian "failed to exhaust or somehow waived its remedies— depends on whether the agency had the opportunity to 'develop the necessary factual background upon which decisions should be based' and whether the Agency had 'the first chance to exercise [its] discretion or to apply [its] expertise.' " (quoting *McKart v. United States*, 395 U.S. 185, 194, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969)) (modifications in original). Protestor also asserts that "both NIDA and OHA had the opportunity and

---

8. A line of decisions also suggests this court has jurisdiction to review the final decisions of the Small Business Administration, as long as those decisions are in connection with a proposed procurement. *See Cavalier Clothes, Inc. v. United States*, 810 F.2d 1108, 1111–12 (Fed.Cir.1987) ("[N]othing either in the language or the legislative history of [the Small Business Act at 15 U.S.C.] § 634 suggests that Congress intended to grant the SBA any greater immunity from injunctive relief than that possessed by other governmental agencies."); *Arcata Assocs., Inc. v. United States*, 110 Fed.Cl. 290 (2013) (holding that "the CO's initial code designation and OHA's decision rejecting that designation ... are both 'in connection with' a proposed ongoing procurement" (quoting 28 U.S.C. § 1491(b)(1))); *InGenesis, Inc. v. United States*, 104 Fed.Cl. at 46; *Taylor*

*Consultants, Inc. v. United States*, 90 Fed.Cl. 531, 546 (2009); *Advanced Sys. Tech., Inc. v. United States*, 69 Fed.Cl. at 481; *LB & B Assocs. Inc. v. United States*, 68 Fed.Cl. 765, 770 (2005); *Chapman Law Firm v. United States*, 63 Fed.Cl. 25, 28 (2004); *Mark Dunning Indus., Inc. v. United States*, 58 Fed.Cl. 216, 220 (2003); *Ceres Envtl. Servs., Inc. v. United States*, 52 Fed.Cl. 23, 24 (2002). *But see Red River Serv. Corp. v. United States*, 60 Fed.Cl. at 537 (indicating that the Federal Circuit has not resolved *"what court* has jurisdiction to review SBA decisions") (emphasis in original). As the court has jurisdiction pursuant to the Tucker Act to review the contracting officer's decision to amend the solicitation, the court does not reach the issue of whether it has jurisdiction to review the Small Business Administration's decision.

obligation to consider all potentially applicable NAICS codes, including the code proposed by Palladian here and then select the code that best describes the services NIDA requires."

■ In the pre-award bid protest now before the court; the court is reviewing solicitation N01DA–14–4423 and the action of the NIDA contracting officer to include NAICS code 541611 in that solicitation. As discussed above, under FAR procurement decisions, the contracting officer has the responsibility to ensure the fair treatment of all potential contractors. *See* FAR 1.602–2; *see also* FAR 1.102–4(a); *Hunt Bldg. Co., Ltd. v. United States,* 61 Fed.Cl. at 273; *OSG Prod. Tankers LLC v. United States,* 82 Fed.Cl. at 574. Although defendant asserts that "in the statutorily [sic] and regulatory framework, the contracting officer is not the final agency decision-maker and his view cannot and does not bind the Government," in a bid protest action the focus of the court's scrutiny is on the procuring agency and on the decisions made by the contracting officer with authority with respect to a solicitation. *See Banknote Corp. of Am., Inc. v. United States,* 365 F.3d at 1351 (stating that a contract award may be set aside if " 'the procurement official's decision lacked a rational basis....' " (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d at 1332)); *see also* FAR 1.602–2. Therefore, the court examines the contracting officer's actions to modify the solicitation and to adopt the new NAICS code advocated by the Small Business Administration Office of Hearings and Appeals. The contracting officer's responsibility, under the FAR, requires that the NAICS code used for a small business solicitation "best describes the principal nature of the product or service being acquired." FAR 19.102(b)(1).

Defendant argues that "[p]ermitting Palladian to litigate in this court without first exhausting administrative remedies before OHA will give rise to several adverse consequences," including bypassing of the Small Business Administration Office of Hearings and Appeals process. Defendant states: "Remarkably, Palladian suggests that contractors should be able to bypass the administrative process simply because they may not have decided to submit an offer by the deadline for filing an appeal. Surely, such interests cannot form the basis for allowing potential offerors to ignore procurement regulations and administrative processes."

Adopting defendant's approach, however, would require any small business considering offering a bid to a solicitation, even if it has not yet decided whether or not to submit an offer, to intervene in every Small Business Administration NAICS code challenge to the solicitation, in order to preserve the possibility of judicial review, even if the NAICS code currently in the solicitation had no adverse impact on the prospective small business offeror. The need to intervene would exist even for those who are satisfied with the existing NAICS code in the solicitation, because of the risk that a Small Business Administration Office of Hearings and Appeals judge could choose a different NAICS code, given the Office of Hearings and Appeals' responsibility to review all NAICS codes, *sua sponte,* and pick the one in its view most applicable to the challenged solicitation. *See* 13 C.F.R. § 121.402(b); *Ceres Envtl. Servs., Inc. v. United States,* 52 Fed.Cl. at 35 ("The SBA–OHA, in deciding an NAICS appeal, considers not only those NAICS codes advocated by the CO and the protestor, but also considers 'any other ... [NAICS] code it deems, *sua sponte,* arguably is appropriate for the solicitation.' " (quoting *Info. Ventures, Inc.,* SBA No. 4294, 1998 WL 128528, at *3 (Mar. 18, 1998), and citing *DCS Corp. and ENSO, Inc.,* SBA No. 3371, 1990 WL 260218 (Nov. 14, 1990))) (modification in original); *see also Arcata Assocs., Inc. v. United States,* 110 Fed.Cl. at 304; *Info. Ventures, Inc.,* 2014 WL 1395651, at *7; *The U.S. Small Bus. Admin.,* SBA No. NAICS–5526, 2014 WL 183785, at *8 (Jan. 8, 2014) ("Because Appellant has demonstrated that the CO erred in assigning NAICS code 541330, I must consider which NAICS code best describes the principal purpose of the acquisitions."); *R. Christopher Goodwin & Assocs., Inc.,* SBA No. NAICS–5393, 2012 WL 7062368, at *5 (Aug. 23, 2012) ("In making this decision, OHA will consider—but is not bound by—the NAICS code recommended by the Appellant." (citing *CHP Int'l, Inc.,*

SBA No. NAICS–5367, 2012 WL 3000372, at *4 (June 21, 2012) (selecting a NAICS code that, "was neither designated by the CO nor advocated by the Appellant"))). Therefore, in any solicitation with a small business set-aside, many small businesses, potentially, would have to intervene in order to preserve an opportunity for judicial review, making many of these interventions "'useless motions in order to preserve their rights.'"[9] *See Corus Staal BV v. United States,* 502 F.3d 1370, 1378–79 (Fed.Cir.2007) (quoting *Bendure v. United States,* 213 Ct.Cl. 633, 641, 554 F.2d 427 (1977)). Moreover, if the Small Business Administration Office of Hearings and Appeals chooses an incorrect and inapplicable NAICS code, under defendant's theory, that new NAICS code could become completely unreviewable, a seemingly unusual, and unfair result, which is inconsistent with a transparent and fair procurement system. Small businesses considering competing for a contract in which the NAICS code is challenged could be forced to expend significant time and money to involve themselves in potentially costly litigation, in some cases, even before having made the decision of whether or not to submit a proposal.

On the other hand, potential offerors who believe the NAICS code chosen by the procuring agency should be maintained still might be incentivized to intervene in an Office of Hearings and Appeals NAICS challenge proceeding, to protect the NAICS code they prefer, rather than wait to come to this court, because they would have the benefit of the high burden a challenger in an Office of Hearings and Appeals proceeding must overcome to show that the NAICS code chosen by the contracting officer was a "clear error of fact or law," by a preponderance of the evidence. *See* 13 C.F.R. § 134.314 (2014); *Info. Ventures, Inc.,* 2014 WL 1395651, at *5. If the original NAICS code is reexamined and then changed by the procuring agency following a decision by the Small Business Administration Office of Hearings and Appeals, however, a small business impacted by the change would then be the party which would have to show that the contracting officer's decision to revise the solicitation was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A); *Grumman Data Sys. Corp. v. Dalton,* 88 F.3d 990, 995–96 (Fed.Cir.1996). This is a highly deferential standard. *See Co–Steel Raritan, Inc. v. Int'l Trade Comm'n,* 357 F.3d 1294, 1309 (Fed. Cir.2004) (In discussing the "arbitrary, capricious, and abuse of discretion otherwise not in accordance with the law" standard, the United States Court of Appeals for the Federal Circuit stated that "'the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.'" (quoting *Tex. Crushed Stone v. United States,* 35 F.3d 1535, 1540 (Fed.Cir.1994))); *In re Sang Su Lee,* 277 F.3d 1338, 1342 (Fed.Cir.2002), *aff'd on subsequent appeal,* 262 Fed.Appx. 275 (Fed.Cir. 2008); *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1057–58 (Fed. Cir.) ("The arbitrary and capricious standard applicable here is highly deferential. This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors."

---

9. Without specifying the time period, the Small Business Administration in a March 1, 2010 notice of proposed rulemaking stated, "OHA receives very few NAICS code appeals. On average 10 NAICS code appeals are filed annually," and offered as a reason, "the short appeal timelines." *See* 75 Fed.Reg. 9129, 9129, 9131 (Mar. 1, 2010). At the May 6, 2014 hearing, although agreeing that "[t]hese cases don't come up that often," protestor's counsel stated, "[t]here have been 73, I think, in the past three years and 19 last year...."

During the May 6, 2014 hearing, defendant argued that there were only a limited number of potential offerors for the NIDA solicitation at issue. Mr. Goodling, the NIDA contracting officer, stated that "[u]nder the current NAICS code,

there are three" potential offerors, and that "[w]e received intent sheets from six companies; three of them were thrown out based on the new NAICS code." The contracting officer stated, however, that "we don't have an exact clue until we receive the proposals," and that their estimate of offerors came only from intent sheets received thus far by NIDA. Although until after the closing date for receipt of offers it is impossible to know how many offers are received, even assuming defendant's estimate of six offerors is true, it would still mean that, under defendant's approach, any small business, potential offeror would have had to intervene in the March 10, 2014 appeal to the Small Business Administration Office of Hearings and Appeals in order to preserve their opportunity for judicial review.

(citing *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974), *reh'g denied,* 420 U.S. 956, 95 S.Ct. 1340, 43 L.Ed.2d 433 (1975))), *reh'g denied* (Fed.Cir.2000).

■ The protestor argues, "Palladian is an interested party because it was eligible for, and intended to submit an offer for, this contract as a small business under the initial Solicitation, which was set-aside for small businesses under NAICS code 541712, Research and Development in the Physical, Engineering, and Life Sciences (except Biotechnology)." The Tucker Act grants the United States Court of Federal Claims,

> jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1). In order to properly come before this court, a protestor must "establish that it '(1) is an actual or prospective bidder and (2) possess[es] the requisite direct economic interest.'" *Weeks Marine, Inc. v. United States,* 575 F.3d 1352, 1362–63 (Fed.Cir.2009) (quoting *Rex Serv. Corp. v. United States,* 448 F.3d 1305, 1308 (Fed.Cir. 2006)) (modification in original); *see also Sys. Application & Techs., Inc. v. United States,* 691 F.3d at 1382 (also noting that the "'interested party' standard is more stringent than" the "'case or controversy'" requirement of Article III of the United States Constitution) (citations omitted); *MVS USA, Inc. v. United States,* 111 Fed.Cl. 639, 647 (2013); *Preferred Sys. Solutions, Inc. v. United States,* 110 Fed.Cl. 48, 56 (2013); *Miles Constr., LLC v. United States,* 108 Fed.Cl. 792, 797 (2013).

In the context of a pre-award bid protest, the United States Court of Appeals for the Federal Circuit has determined that to show the requisite "direct economic interest," and therefore be an "interested party" under the Tucker Act, the protestor has to have suffered a "'non-trivial competitive injury which can be addressed by judicial relief.'" *See Orion Tech., Inc. v. United States,* 704 F.3d 1344, 1348 (Fed.Cir.2013) (quoting *Weeks Marine, Inc. v. United States,* 575 F.3d at 1362–63); *see also COMINT Sys. Corp. v. United States,* 700 F.3d 1377, 1383 n. 7 (Fed. Cir.2012) ("[I]n *Weeks Marine* this court specifically held that the 'non-trivial competitive injury' standard was applicable to 'a *pre-award* protest.'" (quoting *Weeks Marine, Inc. v. United States,* 575 F.3d at 1362)) (emphasis in original); *MVS USA, Inc. v. United States,* 111 Fed.Cl. at 647; *Miles Constr., LLC v. United States,* 108 Fed.Cl. at 797. This is a lower standard than the "substantial chance" standard used in post-award bid protests, but still requires a "showing of *some* prejudice." *Orion Tech., Inc. v. United States,* 704 F.3d at 1348 (quoting *Weeks Marine, Inc. v. United States,* 575 F.3d at 1362) (emphasis in original). As explained by the United States Court of Appeals for the Federal Circuit:

> We have not had occasion to discuss what is required to prove an economic interest, and thus prejudice, in a case such as this, where a prospective bidder/offeror is challenging a solicitation in the pre-award context. In such a case, it is difficult for a prospective bidder/offeror to make the showing of prejudice that we have required in post-award bid protest cases. *See, e.g., Statistica[ Inc., v. Christopher],* 102 F.3d [1577] at 1582 [ (1996) ] (holding that a contractor lacked standing because it failed to show a "substantial chance it would have received the contract award but for" agency error). The reason of course is that, in a case such as this, there have been neither bids/offers, nor a contract award. Hence, there is no factual foundation for a "but for" prejudice analysis. However, Article III considerations require a party such as Weeks to make a showing of *some* prejudice.

*Weeks Marine, Inc. v. United States,* 575 F.3d at 1361 (emphasis in original); *see also Orion Tech., Inc. v. United States,* 704 F.3d at 1348; *Miles Constr., LLC v. United States,* 108 Fed.Cl. at 797–98; *Golden Mfg. Co., Inc. v. United States,* 107 Fed.Cl. 264, 272 (2012).

■ It is uncontested that Palladian is a prospective bidder to the solicitation. As to

whether protestor's economic interests are affected, Palladian contends that it "would have been eligible to bid under the NAICS code initially assigned to the Solicitation and would be eligible to bid as a small business under the proper NAICS code—519130—because it meets the size standards for those codes requiring fewer than 500 employees." Palladian alleges that under the current NAICS code in the amended solicitation, NAICS code 541611, however, it is ineligible to compete because of the limitation to small business with annual receipts of $14.0 million or less. The contract to be awarded is a one year contract with the potential for four option years, making it conceivable protestor will not have the opportunity to bid on these services again for up to five years. Having been rendered ineligible to compete by a change in the solicitation, specifically, by a change in the NAICS code, is sufficient to grant standing. It is a "nontrivial competitive injury," which this court can address, if appropriate, through an injunction of the solicitation. *See Orion Tech., Inc. v. United States,* 704 F.3d at 1348; *Arcata Assocs., Inc. v. United States,* 110 Fed.Cl. at 295 (finding that the pre-award bid protestor had standing because "Arcata is the incumbent contractor," intending to submit a proposal, "but subsequently was rendered ineligible to compete under the proposed amended Solicitation"); *Red River Serv. Corp. v. United States,* 60 Fed.Cl. at 538 (The pre-award bid protestor "has a direct economic interest in being awarded this contract, based on the dollar amount at issue, and the fact that a new contract for these services may not be solicited for another seven years."); *Ad-*

*vanced Sys. Tech., Inc. v. United States,* 69 Fed.Cl. at 483 (A pre-award bid protestor challenging "the OHA process and the resultant NAICS code and its insertion into the solicitation rendering Plaintiff ineligible" had standing to proceed with its suit.). As a prospective offeror committed to bidding on the solicitation, and now rendered ineligible to bid due to an alleged error on the part of government, Palladian has met its burden to demonstrate a possible "non-trivial competitive injury which can be addressed by judicial relief," and, therefore, has standing to bring its claim to this court. *See Weeks Marine, Inc. v. United* States, 575 F.3d at 1361.

*NAICS Code 541611*

 Agency procurement actions should be set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (2)(D); [10] *see also Orion Tech., Inc. v. United States,* 704 F.3d at 1347; *COMINT Sys. Corp. v. United States,* 700 F.3d at 1381; *Savantage Fin. Servs. Inc., v. United States,* 595 F.3d 1282, 1285–86 (Fed. Cir.2010); *Weeks Marine, Inc. v. United States,* 575 F.3d at 1358; *Axiom Res. Mgmt., Inc. v. United States,* 564 F.3d 1374, 1381 (Fed.Cir.2009) (noting arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A), and reaffirming the analysis of *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d at 1332); *Blue & Gold Fleet, L.P. v. United States,* 492 F.3d 1308, 1312 (Fed.Cir.2007) ("[T]he inquiry is

**10.** The language of 5 U.S.C. § 706 provides:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.
5 U.S.C. § 706.

whether the [government's] procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting 5 U.S.C. § 706(2)(A) (2000))); *Bannum, Inc. v. United States,* 404 F.3d at 1351; *Eco Tour Adventures, Inc. v. United States,* 114 Fed.Cl. at 22; *Contracting, Consulting, Eng'g LLC v. United States,* 104 Fed.Cl. 334, 340 (2012). "In a bid protest case, the agency's award must be upheld unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Turner Constr. Co. v. United States,* 645 F.3d 1377, 1383 (Fed.Cir.) (quoting *PAI Corp. v. United States,* 614 F.3d 1347, 1351 (Fed.Cir.2010)), *reh'g and reh'g en banc denied* (Fed.Cir.2011); *see also Glenn Def. Marine (ASIA), PTE Ltd. v. United States,* 720 F.3d 901, 907 (Fed.Cir.2013); *McVey Co. v. United States,* 111 Fed.Cl. 387, 402 (2013) ("The first step is to demonstrate error, that is, to show that the agency acted in an arbitrary and capricious manner, without a rational basis or contrary to law."); *PlanetSpace, Inc. v. United States,* 92 Fed. Cl. 520, 531–32 (2010) ("Stated another way, a plaintiff must show that the agency's decision either lacked a rational basis or was contrary to law." (citing *Weeks Marine, Inc. v. United States,* 575 F.3d at 1358)).

In discussing the appropriate standard of review for bid protest cases, the United States Court of Appeals for the Federal Circuit specifically has addressed subsections (2)(A) and (2)(D) of 5 U.S.C. § 706, *see Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d at 1332 n. 5, but the Federal Circuit has focused its attention primarily on subsection (2)(A). *See COMINT Systems Corp. v. United States,* 700 F.3d at 1381 ("We evaluate agency actions according to the standards set forth in the Administrative Procedure Act; namely, for whether they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting 5 U.S.C. § 706(2)(A))); *Bannum, Inc. v. United States,* 404 F.3d at 1351; *NVT Techs., Inc. v. United States,* 370 F.3d 1153, 1159 (Fed.Cir. 2004) ("Bid protest actions are subject to the standard of review established under section 706 of Title 5 of the Administrative Procedure Act ('APA'), 28 U.S.C. § 1491(b)(4)

(2000), by which an agency's decision is to be set aside only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A) (2000).") (citations omitted); *Banknote Corp. of Am., Inc. v. United States,* 365 F.3d at 1350 ("Among the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting 5 U.S.C. § 706(2)(A), and citing *Advanced Data Concepts, Inc. v. United States,* 216 F.3d at 1057–58)); *Info. Tech. & Applications Corp. v. United States,* 316 F.3d at 1319 ("Consequently, our inquiry is whether the Air Force's procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A) (2000).").

The United States Supreme Court has identified sample grounds which can constitute arbitrary or capricious agency action:

[W]e will not vacate an agency's decision unless it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife,* 551 U.S. 644, 658, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)); *see also F.C.C. v. Fox Television Stations, Inc.,* 556 U.S. 502, 552, 129 S.Ct. 1800, 173 L.Ed.2d 738 (2009); *SKF USA Inc. v. United States,* 630 F.3d 1365, 1374 (Fed.Cir.2011); *Ala. Aircraft Indus., Inc.–Birmingham v. United States,* 586 F.3d 1372, 1375 (Fed.Cir.2009), *reh'g and reh'g en banc denied* (Fed.Cir.2010); *In re Sang Su Lee,* 277 F.3d at 1342 ("The agency must present a full and reasoned explanation of its decision.... The reviewing court is thus enabled to perform a meaningful re-

view...."); *WHR Grp., Inc. v. United States,* 115 Fed.Cl. 386, 398 (2014); *Supreme Foodservice GmbH v. United States,* 109 Fed.Cl. at 382 (applying the standard in a bid protest dispute); *Linc Gov't Servs., LLC v. United States,* 108 Fed.Cl. 473, 489 (2012) (same). The United States Supreme Court also has cautioned, however, that "courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA." *Pension Benefit Guar. Corp. v. LTV Corp.,* 496 U.S. 633, 654, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990).

 A disappointed bidder has the burden of demonstrating the arbitrary and capricious nature of the agency decision by a preponderance of the evidence. *See Grumman Data Sys. Corp. v. Dalton,* 88 F.3d at 995–96; *Davis Boat Works, Inc. v. United States,* 111 Fed.Cl. 342, 349 (2013); *Contracting, Consulting, Eng'g LLC v. United States,* 104 Fed.Cl. at 340; *Fulcra Worldwide, LLC v. United States,* 97 Fed.Cl. 523 (2011). The Federal Circuit has made clear that "[t]his court will not overturn a contracting officer's determination unless it is arbitrary, capricious, or otherwise contrary to law. To demonstrate that such a determination is arbitrary or capricious, a protester must identify 'hard facts;' a mere inference or suspicion ... is not enough." *PAI Corp. v. United States,* 614 F.3d at 1352 (citing *John C. Grimberg Co. v. United States,* 185 F.3d 1297, 1300 (Fed.Cir.1999); *see also Turner Constr. Co., Inc. v. United States,* 645 F.3d at 1387; *Sierra Nev. Corp. v. United States,* 107 Fed.Cl. 735, 759 (2012); *Filtration Dev. Co., LLC v. United States,* 60 Fed.Cl. 371, 380 (2004)).

 Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency, but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. at 43, 103 S.Ct. 2856 ("The scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency."); *see also Turner Constr. Co., Inc. v. United States,* 645 F.3d at

1383; *R & W Flammann GmbH v. United States,* 339 F.3d 1320, 1322 (Fed.Cir.2003) (citing *Ray v. Lehman,* 55 F.3d 606, 608 (Fed.Cir.), *cert. denied,* 516 U.S. 916, 116 S.Ct. 304, 133 L.Ed.2d 209 (1995)). " ' "If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." ' " *Weeks Marine, Inc. v. United States,* 575 F.3d at 1371 (quoting *Honeywell, Inc. v. United States,* 870 F.2d 644, 648 (Fed.Cir.1989) (quoting *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301 (D.C.Cir.1971))); *Davis Boat Works, Inc. v. United States,* 111 Fed.Cl. at 349; *Norsat Int'l [America], Inc. v. United States,* 111 Fed.Cl. 483, 493 (2013); *HP Enter. Servs., LLC v. United States,* 104 Fed.Cl. 230, 238 (2012); *Vanguard Recovery Assistance v. United States,* 101 Fed.Cl. 765, 780 (2011).

As stated by the United States Supreme Court:

> Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Pres. Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), *abrogated on other grounds by Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *see also U.S. Postal Serv. v. Gregory,* 534 U.S. 1, 6–7, 122 S.Ct. 431, 151 L.Ed.2d 323 (2001); *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. at 285, 95 S.Ct. 438; *Co–Steel Raritan, Inc. v. Int'l Trade Comm'n,* 357 F.3d at 1309 (In discussing the "arbitrary, capricious, and abuse of discretion otherwise not in accordance with the law" standard, the Federal Circuit stated that "the ultimate

standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.") (quotation omitted); *In re Sang Su Lee*, 277 F.3d at 1342; *Advanced Data Concepts, Inc. v. United States*, 216 F.3d at 1058 ("The arbitrary and capricious standard applicable here is highly deferential. This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." (citing *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. at 285, 95 S.Ct. 438)); *Lockheed Missiles & Space Co. v. Bentsen*, 4 F.3d 955, 959 (Fed.Cir.1993); *BCPeabody Constr. Servs., Inc. v. United States*, 112 Fed.Cl. 502, 508 (2013) ("The court 'is not empowered to substitute its judgment for that of the agency,' and it must uphold an agency's decision against a challenge if the 'contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" (quoting *Keeton Corrs., Inc. v. United States*, 59 Fed. Cl. 753, 755 (2004), and *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d at 1381)), *appeal withdrawn*, 559 Fed.Appx. 1033 (Fed. Cir.2014) (internal citations omitted); *Supreme Foodservice GmbH v. United States*, 109 Fed.Cl. 369, 382 (2013); *Alamo Travel Grp., LP v. United States*, 108 Fed.Cl. 224, 231 (2012); *Gulf Grp. Inc. v. United States*, 61 Fed.Cl. 338, 351 (2004); *ManTech Telecomms. & Info. Sys. Corp. v. United States*, 49 Fed.Cl. 57, 63 (2001), *aff'd*, 30 Fed.Appx. 995 (Fed.Cir.2002).

Despite the deference the United States Court of Federal Claims typically affords an agency's contracting officer in a bid protest review, this is an atypical case in which the decision under review in this court is one that the contracting officer himself opposed at the Small Business Administration Office of Hearings and Appeals. The contracting officer initially chose to issue the NIDA solicitation under NAICS code 541712, "Research and Development in the Physical, Engineering, and Life Sciences (except Biotechnology)." When the solicitation's original NAICS code was appealed to the Office of Hearings and Appeals, the contracting officer wrote an assertive defense of his original decision to use NAICS code 541712, and listed many reasons why he thought NAICS code 541611,

"Administrative Management and General Management Consulting Services," proposed by Information Ventures, did not match the solicitation's statement of work. The contracting officer stated in his March 20, 2014 **"Substantive Response to the Appeal"** that, "[t]he Contracting Officer strongly maintains that the North American Industry Classification System (NAICS) code 541712 for Research and Development in the Physical, Engineering, and Life Sciences is the proper NAICS designation for this requirement," and that the reasoning given by Information Ventures was "seemingly without consideration to the predominant cost or . . . primary purpose of the contract." (emphasis in original). After the Small Business Administration Office of Hearings and Appeals decision was issued, on April 2, 2014, the contracting officer amended the solicitation to use the NAICS code chosen by the Small Business Administration Office of Hearings and Appeals judge, without any apparent analysis as to whether it was the correct NAICS code to use for the procurement, given the statement of work in the solicitation. Amendment 3 to the solicitation simply states that "[t]he NAICS code is changed from 541712 to 541611 in accordance with United States Small Business Administration decision SBA No. NAICS–5544," with no additional information provided about the new NAICS code selection. A review of the contracting officer's "*28 U.S.C. § 1746 DECLARATION*," appended to defendant's motion for judgment on the administrative record, indicates that after the April 2, 2014 Office of Hearings and Appeals decision, the contracting officer only reviewed his market research to determine that, "there were sufficient small businesses to compete for the work to warrant continuing to restrict the solicitation to small businesses." (capitalization and emphasis in original). The record does not indicate that the contracting officer performed any other analysis when he received the Office of Hearings and Appeals decision, before he issued Amendment 3 and changed the solicitation to reflect the new NAICS code on April 4, 2014. Defendant maintains in its May 5, 2014 and May 7, 2014 filings in this court that "the contracting officer had no discretion and was required to issue Amendment 03," citing 13

C.F.R. § 134.318(b) (2014). By issuing the amended solicitation, however, the contracting officer took responsibility for the change in the solicitation. By blindly accepting the NAICS code chosen by the Small Business Administration Office of Hearings and Appeals judge, and amending the solicitation without any further consideration, the contracting officer did not properly exercise his discretion, as required in accordance with his responsibility as a contracting officer.

Under the FAR, when determining which NAICS code is applicable to a small business procurement, "a product or service shall be classified in only one industry, whose definition best describes the principal nature of the product or service being acquired even though for other purposes it could be classified in more than one." *See* FAR 19.102(c). This general requirement is similarly stated in the Small Business Administration's regulations:

> The procuring agency contracting officer, or authorized representative, designates the proper NAICS code and corresponding size standard in a solicitation, selecting the single NAICS code which best describes the principal purpose of the product or service being acquired. Except for multiple award contracts as set forth in paragraph (c) of this section, every solicitation, including a request for quotations, must contain only one NAICS code and only one corresponding size standard.

13 C.F.R. § 121.402(b). If two or more potential NAICS codes appear applicable to a single solicitation, the FAR instructs: "When acquiring a product or service that could be classified in two or more industries with different size standards, contracting officers shall apply the size standard for the industry accounting for the greatest percentage of the contract price." FAR 19.102(d). The Small Business Administration's regulations offer the following instruction for choosing between two competing NAICS codes:

> (1) Primary consideration is given to the industry descriptions in the U.S. NAICS Manual, the product or service description in the solicitation and any attachments to it, the relative value and importance of the components of the procurement making up

the end item being procured, and the function of the goods or services being purchased.

> (2) A procurement is usually classified according to the component which accounts for the greatest percentage of contract value. Acquisitions for supplies must be classified under the appropriate manufacturing or supply NAICS code, not under a Wholesale Trade or Retail Trade NAICS code.

13 C.F.R. § 121.402(b). The FAR states unequivocally, that "contracting officers shall apply the size standard for the industry accounting for the greatest percentage of the contract price." *See* FAR 19.102(d). The Small Business Administration's regulation is more general and states that a "procurement is *usually* classified according to the component which accounts for the greatest percentage of contract value." FAR 19.102(b)(2) (emphasis added). Since this court is reviewing the contracting officer's determination in connection with a procurement, the court looks to the FAR regulation.

The protestor contends that Task 3 of the solicitation's statement of work comprises the majority of the expected cost of the contract, and, therefore, "Task 3 is the key task to determine the proper assignment of a NAICS code." (internal citation omitted). Defendant takes the position that determining which of the solicitation's seven Tasks account for the greatest portion of the contract's value is not possible at this time, and suggests that the court "determine that the cost issue is not determinative of the appropriate NAICS code designation and to focus on the terms of the Solicitation and the importance of the tasks." Defendant contends that, "[p]articularly, many of the tasks are to be performed 'as needed' or 'as directed.'" According to defendant, "given NIDA's choice to leave wide open how much effort the contractor shall ultimately expend on behalf of the NIH Pain Consortium, the situation undermines the ability of NIDA to estimate with sufficient accuracy contractor effort and costs."

The solicitation describes seven Tasks in the statement of work, summarized and quoted in relevant part below:

Task 1: "The contractor will create monthly reports" about contractor progress and status.

Task 2: "The Contractor will maintain, host and manage an interactive online communication portal for the NIH, Contractor and CoEPEs to use. It will also pay any licensee/software fees."

Task 3: "The Contractor will facilitate the development of the CoEPEs case-based scenarios. **FOR PROPOSAL PURPOSES**: There will be approximately 12 of these case based scenarios per year in need of development." (capitalization and emphasis in original). In addition:

> The Contractor will coordinate the process by which CoEPEs submit their materials to be used in the development of cases, and any supplementary materials. The Contractor will facilitate NIH Pain Consortium evaluation of proposed cases and other materials to be produced, and ensure that redundancies are minimized and significant areas are covered. When materials must be revised by the CoEPEs, the Contractor will facilitate this process though various forms of communication; developing and disseminating timetables with deadlines; summarizing the needs of the NIH; and ensuring that the CoEPEs respond to the NIH reviews in a reasonable, time sensitive and comprehensive way.
>
> The Contractor will use the materials submitted by the CoEPEs to create the on line cases. These cases must be interactive (e.g. allow for answers to be entered and feedback to be given immediately), and include graphics and embedded videos. These cases will be put online and must be 508 compliant as mandated by HHS; provided at no cost to the end user, and must interface well with the common learning management systems used by universities and colleges, for example Blackboard, Moodle and Desire2Learn. To program these cases, the Contractor will use a software package, or do "in-house" programming. One example of a software package that might be used is "Storyline."

The Contractor will proofread, edit, and program all case-based pain treatment scenarios. It will also advise and suggest ways to improve the cases, when applicable. The Contractor will coordinate patient advocacy group communications and input into these cases as directed by the NIH. The Contractor will assure that all materials to be web posted are 508 compliant, including the embedded videos. The Contractor will program all video closed captioning as mandated by HHS 508 compliance regulations. It will also involve communication with the CoEPEs to get materials and content needed to make the cases 508 compliant.

The Contractor will program, format and code as needed to create the website on the NIH Pain Consortium page, as well as provide the graphics and content. The Contractor will work with the NIH to develop this page, and will be responsible for setting up any meetings, conference calls, online discussions, email discussions or any other communications on this topic. The Contractor will be responsible for minutes of any meetings when requested by the NIH. The Contractor will meet with the designated NIH Webmaster in advance of work to determine specifications needed.

The Contractor will receive, format and post supplementary materials associated with the cases, for example lesson plans and teaching packages to be used by educators. If these materials require NIH review, the Contractor will facilitate and document this review, and also ensure required changes are made to these materials.

Task 4: "The Contractor will also facilitate the evaluation of the impact of these training materials" and the dissemination of the results, including through presentations and "an interactive online collaboration site." Additionally, "[i]n collaboration with the CoEPEs, the Contractor will help determine the scope of the use of the materials in teaching setting both within and beyond the CoEPE network, and if the materials changed clinical practice and

health care provider knowledge or perspective."

Task 5: "As required under Task 4, the Contractor, on NIH's request, will organize teleconferences of representatives of the Pain Consortium and the CoEPES [sic]."

Task 6: The contractor will "develop and maintain" a "CoEPE Channel" on YouTube, to store and make accessible "videos to be used in the cases." The contractor "will also obtain, edit, and post descriptions of these materials on YouTube so that the content can be searched, and provide enough context where the YouTube videos will serve as teaching tools that can be viewed independent of the cases they support, and have educational value."

Task 7: "The Contractor, on NIH's request, will obtain additional content for cases previously submitted to the CoEPE program from CoEPEs that are no longer funded by this program, to enhance the quality of the case studies development [sic] based on these materials." The contractor will also, on request, help obtain additional content to for cases when CoEPEs receive additional funding.

The solicitation does not specifically describe which of the Tasks is most important or most costly, or the relative proportion of effort to be expended between the different Tasks.

After a review of the record, it appears that Task 3, encompassing the construction of a website portal, and the creation and posting online of interactive case-based scenarios, will account for the "greatest percentage of the contract price." *See* FAR 19.102(d). Therefore, Task 3 should be most determinative of which NAICS code to apply to the solicitation. When the solicitation was posted on the NIH website, the **"Synopsis"** posted on the website stated:

The Coordination Center will be to maintain and facilitate conversations and collaborations of the CoEPEs on an interactive online communication portal and via other means. This Center will also create online interactive case based teaching scenarios that will be put on the NIH Pain Consortium site and used in teaching students in various professional schools (e.g. nursing, dental, medical and pharmacy schools) about how to diagnose and properly treat pain. Further, the Coordinating Center will design, program, maintain and update the page to be place [sic] on the NIH website. The Coordinating Center will review content from the CoEPEs for each case, proofread and correct content, and program content into interactive cases.

(emphasis in original). The synopsis added that the "contractor must ensure consistency across the cases, in terms of content, presentation and interactivity. It will further coordinate the NIH Pain Consortium review and revision of submitted materials," indicating that the website portal and case-based scenarios, to be developed by the contractor pursuant to Task 3, are central to the solicitation and final work product. NIDA also indicated in its response to questions that the effort involved with Task 3, such as formatting the case-based scenarios, posting them online, and the actual programming of the website, will be significant. The agency stated: "While the scenarios will be developed on an individual basis, NIDA anticipates the cases will consist of about 50–70 pages, and about 10–20 minutes of imbedded videos. We are not modeling these off of any particular design currently on the web." The solicitation also stated that the "[p]resentations are the responsibility of the CoEPEs and the NIH staff," and that, for the videos, "[t]he Coordination Center is only responsible for captioning, formatting for 508 compliance, and incorporating the video into the interactive modules." This suggests that the largest portion of the work to be undertaken by the contractor will be back-end information technology-driven, in preparation for posting the case-based scenarios onto the Internet, as opposed to content creation. Other parts of the solicitation support the court's conclusion that the information technology functions associated with the creation of the website, and publication of the case-based scenarios, will be the most significant part of the awarded contract. Under the solicitation's Article C.2, **"REPORTING REQUIREMENTS,"** the contractor awarded the project would have to submit, among other deliverables, periodic ***"Technical***

*Progress Reports,*" and "all source code and object code developed, modified, and/or enhanced under this contract." (capitalization and emphasis in original). Under "**Other Reports/Deliverables,**" within Article C.2, the contractor would also be required to submit an "**IT [Information Technology] Security Plan**" and "**IT Risk Assessment,**" as well as an "**IT Security Certification and Accreditation.**" (emphasis in original). The solicitation also indicates, at subsection H.8.E.5, "**VULNERABILITY SCANNING REQUIREMENTS,**" that since "[t]his acquisition requires the Contractor to host an NIH webpage or database," the contractor must "conduct periodic and special vulnerability scans, and install software/hardware patches and upgrades to protect automated federal information assets." (capitalization and emphasis in original).

The record reflects that the Coordination Center will "coordinate and facilitate interactions" and "disseminate information." The record also reflects that the "Coordination Center will be responsible for all aspects of the conference call[s]" associated with presenting or disseminating information related to the case-based scenarios. These activities are reflected primarily in Tasks 2 and 4, 5, 6, and 7 in the solicitation. Overall, however, these Tasks appear to be a small portion of the effort envisioned under the solicitation, as is also reflected in the answers to questions provided under Amendment 2 to the solicitation. One question asked:

> [Question] What responsibility will the contractor have for analysis, reporting, and dissemination of the results of evaluation of the impact of the training materials?
>
> **Answer:** The contractor will not be responsible for conducting the evaluations. The major responsibility of dissemination lies with the CoEPEs. Any participation in dissemination by the Coordination Center will be minor and rare. NIDA may ask the coordination center to host a few short teleconferences with the CoEPEs collaborating on a particular dissemination project.

(emphasis in original).

Moreover, in response to the March 10, 2014 appeal to the Small Business Adminis-

tration Office of Hearings and Appeals by Information Ventures, the contracting officer stated:

> The primary purpose of the solicited contract and the majority of the anticipated cost of the contract will be in the implementation of Task 3 of the Statement of Work. The Contractor will use materials researched and submitted by the CoEPEs to develop the online case-scenarios. Further, the Contractor will perform additional research, program, format and code as needed to develop the website on the NIH Pain Consortium page for research support in disseminating health based information.

The contracting officer also emphasized the coding, website creation, and other information technology functions that would have to be performed by the contractor:

> Under Task 3 the contractor will develop a website on the NIH Pain Consortium webpage which will provide access to the interactive case-based scenarios that are being produced by the contractor. No previous case-based scenario modules have been fully developed, and no website to host the case-based scenarios has been created. Therefore, the contractor will be responsible for the R & D creation of the two predominant products in the contract.

The contracting officer also stated that Task 1, the creation of monthly progress reports, is "standard practice," performed "in order for the Government personnel to be kept informed of a contractor's current progress." The contracting officer stated that the "online communication portal" to be created under Task 2 "is necessary to complete the work in Task 3," but that, along with Task 1, "the first two tasks are not the principal purpose of the contract, nor do they account for the greatest percentage of contract costs." Regarding Tasks 4 and 5, the contracting officer stated that, "it is NIDA's intention that most organizational activities will take place through conference calls and have minimal impact on the cost of the contract." The contracting officer commented that Task 6, "[t]he creation of the YouTube channel and the posting of videos will not require great expense and is ancillary to the

primary requirements of Task 3." The contracting officer added: "Much like the Task 1, 2, 4, and 5, this task is for disseminating information created during the Task 3 process." The contracting officer noted that "Task 7 is directly related to the contractor's primary duty under Task 3 to research, create and develop case-based scenarios."

Defendant argues that:

[T]he development of the case-based scenarios is administrative assistance work, even if part of that work may also be considered online posting. Hence, the contracting officer's statement [to the Office of Hearings and Appeals] is not dispositive of whether the development of the case-based scenarios is administrative assistance work, or whether such costs "account[ ] for the greatest percentage of contract value."

(quoting 13 C.F.R. § 121.402(b)(2)). Defendant also argues that, "the costs for building the website and the online communication portal are highly dependent on an offeror's technical approach," because the final contractor could choose to either write the website code in-house or use a commercial software package. Therefore, according to defendant, "the level of effort, and in turn, the costs for creating the website and the online communication portal need not be as significant as Palladian is portraying." Defendant, however, does not cite to any documentation in the record that supports a cost difference, significant or otherwise, resulting from creating the online communications portal in-house, as opposed to using a purchased service.

The defendant, in the alternative, argues that in choosing to issue the solicitation as a cost-reimbursement contract, "the Agency is implying that the costs cannot be estimated with sufficient accuracy" to enable a conclusion as to which Task will account for the majority of the awarded contract's anticipated costs. Defendant contends that, "[a]s stated in his declaration, he 'determined that it was appropriate to procure the coordination center services as a cost-type [cost-reimbursement] contract because NIDA could not estimate contractor levels of effort and the costs of performance with sufficient accuracy to solicit the work as a fixed price or time-and-materials effort.' " In support, defendant points to the statement in the contracting officer's declaration to this court: "I determined that it was appropriate to procure the coordination center services as a cost-type contract because NIDA could not estimate contractor levels of effort and the costs of performance with sufficient accuracy to solicit the work as a fixed price or time-and-materials effort." Defendant claims that "in accordance with FAR 16.301-2, a contracting officer can only create a cost-type contract when the agency cannot sufficiently define its requirements, see FAR 16.301-2(a)(1), or performance uncertainties do not allow costs to be estimated with sufficient accuracy, see FAR 16.301-2(a)(2)." FAR 16.301-2(b) states that, "[t]he contracting officer shall document the rationale for selecting the contract type in the written acquisition plan." See FAR 16.301-2(b) (2013). No such acquisition plan was provided in the record. Regardless, the record before the court indicates that even if there was variability in the project's statement of work, a sufficient amount of the statement of work was defined in order for the contracting officer, and this court, to conclude that Task 3 encompasses the majority of the cost and effort envisioned by the solicitation. Furthermore, the record before the court also indicates that the biggest source of variability in the solicitation's statement of work would apparently arise if the government exercises the right to have the contractor create additional case-based scenarios pursuant to the requirements of Task 3. The solicitation states that the following option could exist in the final contract:

*D. Options for Increased Quantity* (each of the following options apply to the base contract year and each option year):

. . .

Upon exercise of the specified option(s) by the Contracting Officer, the Contractor shall perform tasks described in Task 3 for additional new case-based scenarios as specified below:

Option 1 (see Task 3, Case development): Create a case-based teaching module using the materials supplied by a specified CoEPE contract. This option

may be exercised up to 18 times per contract year.

(emphasis in original). NIDA, in answering questions from potential offerors, indicated that the largest expected variability in the solicitation's statement of work could come from the government's right to increase the number of case-based scenarios the contractor would have to create, pursuant to Task 3:

All of the work for the base period of the contract (Tasks 1–7) is included in the 3,220 direct labor hours. The option quantity for each additional case scenario [under Task 3] is estimated at 360 direct labor hours.

The relative proportion of the solicitation's workload to be found under Task 3, therefore, would increase if the government were to exercise the quantity options under the contract. Therefore, even accounting for the potential, differing quantity options in the solicitation's statement of work, a review of the administrative record indicates that Task 3 accounts "for the greatest percentage of the contract price."[11] *See* FAR 19.102(d); *see also* 13 C.F.R. § 121.402(b).

Regarding which NAICS code "best describes the principal nature of the product or service being acquired," *see* FAR 19.102(b)(1), protestor contends that:

A comparison between the Solicitation's text and the text of the NAICS Manual demonstrates that OHA's selection of NAICS Code 541611, Administrative Management and General Management Consulting Services, and the contracting officer's subsequent adoption of that NAICS code, lacks a rational basis, violates these specific regulatory requirements and is, therefore, arbitrary, capricious, and an abuse of discretion.

Protestor also asserts that "OHA's case law confirms that NAICS code 541611 is not the best NAICS code for the effort required by this Solicitation," and that the Office of Hearings and Appeals' case law indicates that "NAICS code 541611 is used for general consulting services in support of an agency, and not more complicated efforts where the contractor will be responsible for providing independent services." Protestor maintains that the contracting officer and Office of Hearings and Appeals should have chosen NAICS code 519130, "Internet Publishing and Broadcasting and Web Search Portals," as "[t]his NAICS code 'best describes the principal purpose' of the Solicitation," instead of NAICS code 541611. Protestor notes that, "[f]or example, NAICS Code 519130 includes 'publishing and/or broadcasting content on the Internet exclusively,' and this RFP calls for publishing of online scenarios and videos." Protestor argues that the solicitation's requirement for the contractor to submit an "IT Security Plan and IT Risk Assessment, and submit to an annual IT security assessment," "are closely related to creation of a website, but not to general consulting services." Neither the defendant, nor the protestor, have argued in favor of returning to NAICS code 541712, the original code included in the solicitation when it was first issued, as the correct NAICS code.

The defendant has provided, in the administrative record before the court, the most recent, 2012 definitions of the NAICS codes at issue in the above captioned protest. The following is given as the definition for the NAICS code currently in the amended solicitation, "**541611 Administrative Management and General Management Consulting Services:**"

This U.S. industry comprises establishments primarily engaged in providing operating advice and assistance to businesses and other organizations on administrative management issues, such as financial plan-

---

11. The defendant makes a related argument that any estimate using direct labor hours to determine which part of the contract is most costly is impossible, because "the solicitation contemplates option quantities which may significantly alter any cost allocation." According to defendant, "if the Government orders at least ten option quantities in one year (for an estimated effort of 3,600 hours), then the creation of the case-based teaching modules exceeds the efforts for all of the other work under the contract, which is estimated at only 3,320 hours per year." As protestor correctly notes, however, those additional, optional case-based modules would be created within the scope of the statement of work described in Task 3, therefore increasing the relative importance and expense of Task 3 in proportion to the other Tasks described in the statement of work.

ning and budgeting, equity and asset management, records management, office planning, strategic and organizational planning, site selection, new business startup, and business process improvement. This industry also includes establishments of general management consultants that provide a full range of administrative; human resource; marketing; process, physical distribution, and logistics; or other management consulting services to clients.

*Illustrative Examples:*

Administrative management consulting services

Site selection consulting services

Financial management (except investment advice) consulting services

Strategic planning consulting services

General management consulting services

*Cross–References.*

- Establishments primarily engaged in providing a range of day-to-day office administrative services, such as financial planning, billing and recordkeeping, personnel, and physical distribution and logistics, are classified in Industry 561110, Office Administrative Services;

- Establishments providing operations consulting services are classified in U.S. Industry 541614, Process, Physical Distribution, and Logistics Consulting Services;

- Establishments primarily engaged in administering, overseeing, and managing other establishments of the company or enterprise (except government establishments) are classified in U.S. Industry 551114, Corporate, Subsidiary, and Regional Managing Offices;

- Government establishments primarily engaged in administering, overseeing, and managing governmental programs are classified in Sector 92, Public Administration; and

- Establishments primarily engaged in providing investment advice are classified in Industry 523930, Investment Advice.

(emphasis in original).

Although not contained in the administrative record provided by defendant, protestor points out that "Index Entries" for the individual NAICS codes can be found on the www.census.gov website.[12] Protestor states that these index entries are "a list of phrases that leads to classification in this NAICS category." Both the FAR and Small Business Administration's regulations instruct contracting officers to refer to the NAICS code definitions that are in the "NAICS Manual." *See* 13 C.F.R. § 121.402(b)(1); FAR 19.102(d). As stated on the www.census.gov website, "[t]he official 2012 U.S. NAICS Manual includes definitions for each industry, background information, tables showing changes between 2007 and 2012, and a comprehensive index." The "comprehensive index" consists of a table of index entries for all NAICS codes. *See Introduction to NAICS, U.S. Census Bureau* (last revised May 22, 2014), http://www.census.gov/eos/www/naics/index.html. Additionally, the United States Census Bureau website instructs users attempting to identify a NAICS code for their business to examine "the corresponding definition, as well as cross-references and index items, when available." *See Frequently Asked Questions (FAQ), North American Industry Classification System,* U.S. Census Bureau, http://www.census.gov/eos/www/naics/faqs/faqs.html#q1. The following index entries are represented for NAICS code 541611:

Administrative management consulting services

Business management consulting services

Business start-up consulting services

Financial management consulting (except investment advice) services

---

12. Although the NAICS standard "was developed under the direction and guidance of the Office of Management and Budget (OMB)," the NAICS directory is located on the United States Census Bureau website. *See Frequently Asked Questions (FAQ), North American Industry Classification System,* U.S. Census Bureau (last revised Oct. 24, 2013), http://www.census.gov/eos/www/naics/ faqs/faqs.html# q1. The FAR indicates that the www.census.gov website is the official source for NAICS codes. *See* FAR 19.102(b)(1) (indicating that the definitions for NAICS codes are to be found at http://www.census.gov/eos/www/naics/). The NAICS code definitions file in the administrative record is from the www.census.gov website.

General management consulting services

Medical office management consulting services or consultants

Records management consulting services

Reorganizational consulting services

Site location consulting services

Site selection consulting services

Strategic planning consulting services

See *541611 Administrative Management and General Management Consulting Services, 2012 NAICS Definition*, U.S. Census Bureau (last revised May 13, 2013), https://www.census.gov/cgi-bin/sssd/naics/naicsrch.

In the record provided to the court, the following is given as the definition for the NAICS code proposed by the protestor, "**519130 Internet Publishing and Broadcasting and Web Search Portals:**"

This industry comprises establishments primarily engaged in (1) publishing and/or broadcasting content on the Internet exclusively or (2) operating Web sites that use a search engine to generate and maintain extensive databases of Internet addresses and content in an easily searchable format (and known as Web search portals). The publishing and broadcasting establishments in this industry do not provide traditional (non-Internet) versions of the content that they publish or broadcast. They provide textual, audio, and/or video content of general or specific interest on the Internet exclusively. Establishments known as Web search portals often provide additional Internet services, such as e-mail, connections to other web sites, auctions, news, and other limited content, and serve as a home base for Internet users.

*Illustrative Examples:*

Internet book publishers

Internet sports sites

Internet entertainment sites

Internet video broadcast sites

Internet game sites

Internet news publishers

Internet periodical publishers

Internet radio stations

Internet search portals

Web search portals

Internet search web sites

*Cross–References.* Establishments primarily engaged in—

● Providing wired broadband Internet access using own operated telecommunications infrastructure—are classified in Industry 517110, Wired Telecommunications Carriers;

● Providing both Internet publishing and other print or electronic (e.g., CD–ROM, diskette) editions in the same establishment or using proprietary networks to distribute content—are classified in Subsector 511, Publishing Industries (except Internet) based on the materials produced;

● Providing Internet access via client-supplied telecommunications connections—are classified in U.S. Industry 517919, All Other Telecommunications;

● Providing streaming services on content owned by others—are classified in Industry 518210, Data Processing, Hosting, and Related Services;

● Wholesaling goods on the Internet—are classified in Sector 42, Wholesale Trade;

● Retailing goods on the Internet—are classified in Sector 44–45, Retail Trade; and

● Operating stock brokerages, travel reservation systems, purchasing services, and similar activities using the Internet rather than traditional methods—are classified with the more traditional establishments providing these services.

(emphasis in original). The following index entries are represented for NAICS code 519130:

Advertising periodical publishers, exclusively on Internet

Agricultural magazine and periodical publishers, exclusively on Internet

Almanac publishers, exclusively on Internet

Art publishers, exclusively on Internet

Atlas publishers, exclusively on Internet

Book publishers, exclusively on Internet

Broadcasting exclusively on Internet, audio

Broadcasting exclusively on Internet, video

Business directory publishers, exclusively on Internet

Calendar publishers, exclusively on Internet

Catalog of collections publishers, exclusively on Internet

Children's coloring book publishers, exclusively on Internet

Comic book publishers, exclusively on Internet

Diary and time scheduler publishers, exclusively on Internet

Dictionary publishers, exclusively on Internet

Directory publishers, exclusively on Internet

Discount coupon book publishers, exclusively on Internet

Electronic directory publishers, exclusively on Internet

Encyclopedia publishers, exclusively on Internet

Entertainment sites, Internet

Fiction book publishers, exclusively on Internet

Financial magazine and periodical publishers, exclusively on Internet

Game sites, Internet

Greeting card publishers, exclusively on Internet

Guide, street map, publishers, exclusively on Internet

Internet book publishers

Internet broadcasting

Internet comic book publishing

Internet entertainment sites

Internet game sites

Internet magazine publishing

Internet news publishers

Internet newsletter publishing

Internet newspaper publishing

Internet periodical publishers

Internet radio stations

Internet search portals

Internet search web sites

Internet sports sites

Internet video broadcast sites

Juvenile magazine and periodical publishers, exclusively on Internet

Magazine publishers, exclusively on Internet

Map publishers, exclusively on Internet

Medical journal and periodical publishers, exclusively on Internet

Newsletter publishers, exclusively on Internet

Newspaper publishing, exclusively on Internet

Nonfiction book publishers, exclusively on Internet

Pamphlet publishers, exclusively on Internet

Pattern and plan (e.g., clothing patterns) publishers, exclusively on Internet

Periodical publishers, exclusively on Internet

Portals, web search

Postcard publishers, exclusively on Internet

Poster publishers, exclusively on Internet

Professional book publishers, exclusively on Internet

Professional magazine and periodical publishers, exclusively on Internet

Publishers, Internet greeting card

Publishers, Internet map

Publishers, Internet racing form

Racetrack program publishers, exclusively on Internet

Racing form publishers, exclusively on Internet

Radio guide publishers, exclusively on Internet

Radio schedule publishers, exclusively on Internet

Religious book publishers, exclusively on Internet

Religious magazine and periodical publishers, exclusively on Internet

Scholarly journal publishers, exclusively on Internet

Scholastic magazine and periodical publishers, exclusively on Internet

School book publishers, exclusively on Internet

School textbook publishers, exclusively on Internet

*Scientific journal and periodical publishers,* exclusively on Internet

Search portals, Internet

Special interest portals (e.g., parents sharing information about child rearing, etc.), Internet

Street map and guide publishers, exclusively on Internet

Technical magazine and periodical publishers, exclusively on Internet

Technical manual publishers, exclusively on Internet

Telephone directory publishers, exclusively on Internet

Television guide publishers, exclusively on Internet

Trade journal publishers, exclusively on Internet

Trade magazine and periodical publishers, exclusively on Internet

Travel guide book publishers, exclusively on Internet

University press publishers, exclusively on Internet

Video broadcasting, exclusively on Internet

Web broadcasting

Web communities

Web search portals

Yearbook (e.g., high school, college, university) publishers, exclusively on Internet

*See 519130 Internet Publishing and Broadcasting and Web Search Portals, 2012 NAICS Definition,* U.S. Census Bureau, https://www.census.gov/cgi-bin/sssd/naics/naicsrch (hereinafter *NAICS code 519130 Index Entries*).

The protestor's allegation that the majority of the solicitation's anticipated cost and effort, which appears to be generated by Task 3, aligns better with NAICS code 519130 than with NAICS code 541611, has merit. As the contracting officer described in his filing to the Office of Hearings and Appeals during Information Ventures' March 10, 2014 appeal to the Small Business Administration Office of Hearings and Appeals:

> Under Task 3 the contractor will develop a website on the NIH Pain Consortium web-

page which will provide access to the interactive case-based scenarios that are being produced by the contractor. No previous case-based scenario modules have been fully developed, and no website to host the case-based scenarios has been created.

The creation of a website and the publishing of content online align better with NAICS code 519130's classification of companies "publishing and/or broadcasting content on the Internet exclusively." The solicitation states that "[t]he Contractor will use the materials submitted by the CoEPEs to create the online cases," and that the cases "must be interactive" and be "508 compliant." The agency further states, in its response to questions from potential offerors, that the website to be created by the contractor will be "for sharing the resources and is open to the public." These requirements track with the language and intent of NAICS code 519130 better than with NAICS code 541611. The solicitation's description as to how the contractor will create the "interactive" case-based scenarios also more closely aligns with Internet publishing than administrative or general consulting services. The solicitation notes that "[t]he Contractor will proofread, edit, and program all case-based pain treatment scenarios." According to the solicitation, the contractor also will "program all video closed captioning as mandated by HHS 508 compliance regulations." Furthermore, the solicitation states that "[t]he Contractor will program, format and code as needed to create the website on the NIH Pain Consortium page, as well as provide the graphics and content." Finally, the solicitation also indicates that, under Task 3, "[t]he Contractor will receive, format, and post supplementary materials associated with the cases...." The emphasis in Task 3 on formatting, programing, and posting content on the Internet aligns closely with the illustrative examples and index entries of NAICS code 519130, of entities that "provide textual, audio, and/or video content of general or specific interest on the Internet exclusively."

Protestor argues that "Task 3 of the RFP requires creation of a portal for interactive case scenarios," and therefore falls under the NAICS code 519130 index entry "Portals,

Web Search." [13] *See NAICS code 519130 Index Entries.* Protestor further contends that since the NIH Pain Consortium website will help "CoEPEs and pain management providers to discuss treatment options," as well as collect and upload related materials onto the website, it falls under the index entry "Special interest portals (e.g., parents sharing information about child rearing, etc.), Internet." *See id.* The primary purpose of Task 3, to create and place online interactive case-based scenarios, consisting "of about 50–70 pages, and about 10–20 minutes of imbedded videos," also shares similarities to the illustrative example for NAICS code 519130 "Internet periodical publishers," as well as the index entries: "Encyclopedia publishers, exclusively on Internet," and "Medical journal and periodical publishers, exclusively on Internet." *Id.* Furthermore, the publishing of videos online, as required under Task 3, appears to be an activity reflected within a number of NAICS code 519130 index entries, including "Internet broadcasting" and "Video broadcasting, exclusively on Internet." *See id.*

Defendant responds that:

Task 3 consists of more than building a website; the contractor must perform work that is administrative management and assistance, it must "facilitate the development of the CoEPEs case-based scenarios," about 12 per year. It must coordinate the process by which the CoEPEs submit their materials for the cases and "use the materials submitted by the CoEPEs to create the online cases," facilitate the evaluation of the proposed cases, "ensure that redundancies are minimized and significant areas are covered," and "proofread, edit, and program all case-based pain treatment scenarios," and suggest ways to improve them.

13. Task 2 requires hosting and managing "an interactive online communication portal for the NIH." Although not the principal purpose of the solicitation, as indicated by the contracting officer's response to Information Ventures' March 10, 2014 appeal, the online communication portal is for "the Government, Contractor and CoEPEs to coordinate research activities in developing the case-based scenarios. This communication portal is necessary to complete the work

(internal citations omitted). Defendant emphasizes that "[a]s the OHA determined, the fact that Task 3, development of a new website to disseminate information, involves 'computer programing' or information technology does not mean that the task is outside the concept of providing administrative assistance to a Governmental agency." According to defendant, "the fact that the contractor would create new products—a new website and the new interactive teaching case-scenarios to teach students how to diagnose and properly treat pain—does not demonstrate that the NAICS code 541611 chosen by OHA is improper." Defendant argues, instead, that "the principal purpose of the service being acquired is to create an NIH Pain Consortium coordination center that will provide administrative assistance." Defendant also asserts that, "[t]he NIH Pain Consortium does not have its own budget or staff and the Solicitation is intended to provide it with the administrative assistance that it requires."

The protestor replies that defendant's repeated assertions "that the principal purpose is to 'create' the coordination center is an admission that the contractor will be focused on tasks largely unrelated to consulting services." Protestor also adds that a focus on the phrase "coordination center" is misleading, because the Coordination Center does less coordination and management, and instead, "receives case study materials from the CoEPEs, and revises, programs and publishes them as new, online, interactive modules on a contractor-created website."

Although not the primary purpose, or even a major purpose, of Task 3, or a major portion of the cost and effort required under Task 3, Task 3 includes some activities that may be considered by some to be more typical of consulting or administrative services. For example, under Task 3, "[t]he Contractor

in Task 3 by facilitating communication between the Coordination Center, the Government, and the CoEPE's [sic]." (internal citation omitted). The creation of a website portal to "facilitate communications" between groups with similar interests appears to match the description for "Special interest portals," one of the index entries for NAICS code 519130. *See NAICS code 519130 Index Entries.*

will coordinate the process by which CoEPEs submit their materials to be used in the development of cases, and any supplementary materials." Additionally, during the editing process for the case-based scenarios, "the Contractor will facilitate this process through various forms of communication; developing and disseminating timetables with deadlines; summarizing the needs of the NIH, and ensuring that the CoEPEs respond to the NIH reviews in a reasonable, time sensitive and comprehensive way." During the creation of the case-based scenarios under Task 3, the contractor will communicate "with the CoEPEs to get materials and content needed to make the cases 508 compliant," and will have the opportunity to "advise and suggest ways to improve the cases, when applicable." Finally, the contractor will help in the dissemination of information by "setting up any meetings, conference calls, online discussions, email discussions or any other communications on this topic." These activities arguably could be seen as "providing operating advice and assistance to business and other organizations on administrative management issues" in the area of "strategic and organizational planning."

In the protest currently before the court, however, the record indicates that these types of activities comprise only a minor portion of the assignments called for under Task 3. Although the contractor may communicate with the CoEPEs and, potentially, suggest ways to improve the process, actual responsibility for content creation is with the CoEPEs. As NIDA indicated in response to questions, the "[p]resentations are the responsibility of the CoEPEs and NIH staff." NIDA further stated that, "[t]he lesson plans, and teaching packages will be developed by the CoEPE's [sic]." The contracting officer also stated in response to Information Ventures' March 20, 2014 appeal that: "The Contractor will use materials researched and submitted by the CoEPEs to develop the online case-scenarios." Responsibility for evaluation, analysis, and dissemination also falls primarily on the agency, not the contractor. Amendment 2 to the solicitation noted that, "[t]he contractor will not be responsible for conducting the evaluations. The major responsibility of dissemination lies

with the CoEPEs. Any participation in dissemination by the Coordination Center will be minor and rare." The contracting officer repeated this in his submission to the Office of Hearings and Appeals: "While there may be some administrative tasks included within Task 3, such as hosting conference calls, these tasks are extremely minor in terms of overall costs and are done in the furtherance of the development of the case-based scenarios and the website to disseminate them." Conversely, the solicitation, and the agency's response to questions, both indicate that publishing an individual case-based scenario online can take 360 hours, and NIDA anticipates twelve scenarios to be developed per year, with up to eighteen scenarios in addition if all quantity options are exercised. As discussed above, the court has reviewed the references to activities that could fall under administrative or general management consulting within the other Tasks of the solicitation's statement of work, but these activities comprise a small portion of the cost and effort envisioned under the solicitation, and are not a major purpose of the work called for in the solicitation.

The parties cite to various Office of Hearings and Appeals decisions that discuss the NAICS codes at issue, in particular *Panacea Consulting, Inc.*, SBA No. NAICS–4582, 2003 WL 22734391 (Oct. 7, 2003), and an earlier, 2009 *Information Ventures, Inc.* appeal, *Information Ventures, Inc.*, SBA No. NAICS–5037, 2009 WL 2607979 (May 1, 2009). Protestor quotes *Panacea Consulting, Inc.*, 2003 WL 22734391, for the proposition that "*a consulting NAICS code is not appropriate*" when the solicitation "calls for *a great deal more than merely consulting services.*" (emphasis in original). Defendant challenges protestor's interpretation of *Panacea Consulting, Inc.*, stating that "[c]ontrary to Palladian's argument, the OHA did not rule in *Appeal of Panacea Consulting* that NAICS code 541611 is restricted to 'consulting services' or 'merely consulting services.' Although NAICS code 541611 certainly does include consulting services, the language of the code description is much broader." Defendant also cites to *Information Ventures, Inc.*, 2009 WL 2607979, at *6,

for the proposition that NAICS code 519130, which Palladian proposes, " 'is narrowly tailored to Internet publishing.' "

In *Panacea Consulting, Inc.,* 2003 WL 22734391, the solicitation at issue required "the contractor to provide operations support to DOL's [United States Department of Labor's] Division of Foreign Labor Certification program." *Id.* at *2. The Office of Hearings and Appeals judge's review of the solicitation found that "[t]he contractor here must perform some computer-related services, but these services are only part of the required task. The contractor here must provide a full-service application processing unit. The contractor must obtain office space, office equipment (including computers), and staff to process the applications for Foreign Labor Certification." *Id.* at *4. The Office of Hearings and Appeals judge wrote:

> However, the instant procurement calls for a great deal more than merely consulting services. This procurement requires the contractor, not to consult with an entity processing applications, but to establish offices to perform all the work of actually processing the applications, up to the point of a DOL official's final decision. The contractor here will not analyze the process and provide advice, strategic planning, and management consulting; it will actually process the applications. Accordingly, a consulting NAICS code is not appropriate, and the Administrative Judge must consider other NAICS codes.

*Id.* at *5. The Small Business Administration Office of Hearings and Appeals' holding in *Panacea Consulting* is in line with this court's determination that when administrative or advising services comprise a minority of the work at issue, the application of NAICS code 541611 is not appropriate.

In the earlier *Information Ventures, Inc.* appeal, 2009 WL 2607979, the United States Department of Health and Human Services' Centers for Disease Control and Prevention issued a small business solicitation "to provide services for the NPIN [National Prevention Information Network] program." *See id.* at *1. The Small Business Administration Office of Hearings and Appeals judge found that a "review of the SOW [Statement of Work] here establishes that the primary purpose of this procurement is the operation of the NPIN web site." *Id.* at *5. The Office of Hearings and Appeals judge, therefore, concluded, "[i]t is thus clear that the tasks in this contract are in line with those covered by NAICS code 519130, such as Internet search web sites and Internet publishing." *Id.* at *6. The Office of Hearings and Appeals judge noted that, under NAICS code 519130, "[t]he *NAICS Manual* description refers to publishing content on the Internet exclusively, and this Office has held that the code is narrowly tailored to Internet publishing." *Id.* Nonetheless, the Office of Hearings and Appeals judge found no issue with applying NAICS code 519130 to the Centers for Disease Control and Prevention solicitation, because the solicitation's statement of work was "narrowly tailored to the operation of the website," and "[e]ven the publishing of hard copies of documents on the site is outside the scope of the contract." *Id.* Similarly, under solicitation N01DA–14–4423, currently under review, the statement of work does not require publication of any of the case-based scenarios in hard copy, but is tailored to publication of content on the Internet. Although Office of Hearings and Appeals decisions pertaining to different solicitations, each with different statements of work, generally are of limited help in determining which NAICS code to apply to other solicitations, the conclusions in *Panacea Consulting, Inc.,* 2003 WL 22734391 and *Information Ventures, Inc.,* 2009 WL 2607979 give support to this court's findings.

 The record before this court indicates that solicitation N01DA–14–4423 gives responsibility to the contractor for two major categories of deliverables: (1) using the "materials researched and submitted by the CoEPEs to develop the online case-scenarios," and (2) "develop[ing] a website on the NIH Pain Consortium webpage," which are more akin to Internet publishing than to administrative management and general management consulting. As the contracting officer emphasized in his response to Information Ventures' March 10, 2014 appeal to the Small Business Administration Office of Hearings and Appeals, the other Tasks "are

ancillary and in support of the predominant purpose and greatest anticipated percentage of costs for the subject contract, the development and creation the [sic] case-based scenarios and the website to host them." Defendant argues that "[i]n today's network of communications, especially in highly specialized and technical fields like modern medicine, and the education of medical professionals, the communications are overwhelming [sic] based and conducted electronically." Defendant's statement, however, does not support its claim that the services provided are consulting or administrative management services. Instead, defendant's statement simply implies that publishing on the Internet will become more common, and it is increasingly likely to see solicitations for services under NAICS code 519130 in the future. The solicitation before this court does not ask for advisory "services" on how to operate a CoEPE program. The solicitation asks, instead, for the publication online of possibly well over a hundred interactive case-based scenarios, with videos, onto a website created by the contractor. These case-based scenarios will be proofread, edited, and programmed by the contractor, and the videos will be formatted and made "508 compliant" by the contractor. Therefore, the court finds that, given the statement of work to be performed, the issuance of solicitation N01DA–14–4423 under NAICS code 541611 was an arbitrary and capricious action by the contracting officer. *See* 5 U.S.C. § 706(2)(A).

The April 2, 2014 Small Business Administration Office of Hearings and Appeals decision in *Information Ventures*, SBA No. NA-ICS–5544, did not sufficiently discuss why NAICS code 541611 "best demonstrates" the statement of work of the NIDA solicitation. The Office of Hearings and Appeals judge stated that "I must consider which NAICS

code best describes the principal purpose of the acquisition," but offered no discussion as to why he made the NAICS code choice he did. The Office of Hearings and Appeals judge simply stated: "I agree with Appellant [Information Ventures [14]] that NAICS code 541611 is most appropriate here." [15] *See Info. Ventures, Inc.*, 2014 WL 1395651, at *7. The Office of Hearings and Appeals judge also stated that, "OHA has affirmed the use of NAICS code 541611 in situations where a contractor will 'assist[ ] with the administration and management' of an important program." *Id.* (modification in original). The Office of Hearings and Appeals judge further stated that "[t]he instant contractor will perform precisely such work, acting as 'Coordination Center,' assisting with administration matters, and managing communications and interactions between NIH and the CoEPEs," despite indicating earlier in the decision that, "in creating the scenarios, the contractor essentially will perform information technology functions. . . ." *See Info. Ventures, Inc.*, 2014 WL 1395651, at *6–7. The record before this court, however, indicates that "assisting with administrative matters, and managing communications and interactions between NIH and the CoEPEs," constitute only a "minor and rare" portion of the overall effort envisioned under the solicitation. The brief April 2, 2014 decision does not reflect that the Office of Hearings and Appeals judge considered "the relative value and importance of the components of the procurement making up the end item being procured," or which components of the solicitation's statement of work account "for the greatest percentage of contract value," as required under the Small Business Administration's own regulations. *See id.* at *7; *see also* 13 C.F.R. § 121.402(b). The Office of Hearings and Appeals judge stated that "the CO does not dispute Appellant's assertion

---

14. As noted above, in its appeal to the Office of Hearings and Appeals, Information Ventures argued that "[t]he contractor's facilitation, development, dissemination, and meeting duties under Task 3 are entirely administrative services." As demonstrated throughout this opinion, however, the requirements under Task 3 are not primarily administrative services. The Office of Hearings and Appeals judge failed to address this apparent mischaracterization by Information Ventures in his April 2, 2014 decision.

15. In the May 7, 2014 Office of Hearings and Appeals decision rejecting Palladian's appeal, however, the same Office of Hearings and Appeals judge stated: "While it is true that OHA has, in some instances, selected a NAICS code other than those advanced by the parties, OHA typically has done so only after considering the codes actually argued by the litigants." *See Palladian Partners, Inc.*, 2014 WL 1924608, at *6.

that NIH has previously used NAICS code 541611 for similar procurements," but the record indicates that the contracting officer did dispute the application of NAICS code 541611 to the procurement at issue.[16] *See Info. Ventures, Inc.,* 2014 WL 1395651, at \*7. In sum, a review of the statement of work, the record before the court, including the answers to questions asked by potential offerors reflected in Amendment 2 to the solicitation, and the statements by the contracting officer, indicate that Task 3 will generate the majority of the contract's effort, value, and cost. NAICS code 541611 does not best describe the "principal nature" of the services being acquired. *See* FAR 19.102(b)(1).

*Permanent Injunction*

Palladian has moved for a permanent injunction against NIDA "from proceeding with the acceptance and evaluation of proposals submitted in response to Solicitation No. N01DA–14–4423." In *Centech Group, Inc. v. United States,* the Federal Circuit set out the test for a permanent injunction, stating:

> To determine if a permanent injunction is warranted, the court must consider whether (1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief.

*Centech Grp., Inc. v. United States,* 554 F.3d 1029, 1037 (Fed.Cir.2009) (citing *PGBA, LLC v. United States,* 389 F.3d 1219, 1228–29 (Fed.Cir.2004) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987))); *see also Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd.,* 357 F.3d 1319, 1325 (Fed. Cir.) (finding that a plaintiff who cannot demonstrate actual success on the merits cannot prevail on its motion for permanent injunctive relief), *reh'g and reh'g en banc denied* (Fed.Cir.2004); *Hyperion, Inc. v. United States,* 115 Fed.Cl. 541 (2014); *WHR Grp.,*

*Inc. v. United States,* 115 Fed.Cl. at 398; *MVS USA, Inc. v. United States,* 111 Fed.Cl. at 649; *CW Gov't Travel, Inc. v. United States,* 110 Fed.Cl. 462, 494 (2013); *Contracting, Consulting, Eng'g LLC v. United States,* 104 Fed.Cl. at 341 (citing *Centech Grp., Inc. v. United States,* 554 F.3d at 1037) (citation omitted). Success on the merits has been said to be "the most important factor for a court to consider when deciding whether to issue injunctive relief." *Dellew Corp. v. United States,* 108 Fed.Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States,* 492 F.3d at 1312). While success on the merits is necessary, it is not sufficient for protestor to establish that it is entitled to injunctive relief. *See Contracting, Consulting, Eng'g LLC v. United States,* 104 Fed.Cl. at 353 ("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citing *PGBA, LLC v. United States,* 389 F.3d at 1228–29). The four factors are to be considered collectively, rather than individually, such that

> "[n]o one factor, taken individually, is necessarily dispositive.... [T]he weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp. [v. United States],* 3 F.3d [424] at 427 [ (Fed.Cir.1993) ]. Conversely, "the absence of an adequate showing with regard to any one factor may be sufficient" to deny injunctive relief. *Id.*

*Sheridan Corp. v. United States,* 94 Fed.Cl. 663, 668 (2010).

 In the above captioned protest, the protestor has established success on the merits by demonstrating that the government amended the solicitation to fall under a NAICS code that did not best describe the work to be performed under the solicitation's statement of work, in violation of FAR 19.102(b)(1) and 13 C.F.R § 121.402(b). Regarding whether or not protestor will suffer

---

16. The Office of Hearings and Appeals judge stated in the May 7, 2014 decision rejecting Palladian's appeal that it would not "be practicable to specifically comment in the text of a decision on every NAICS code theoretically applicable to a procurement." *See Palladian Partners, Inc.,* 2014 WL 1924608, at \*6. The record before this court, however, indicates that the Office of Hearings and Appeals judge did not appear to consider and did not address any NAICS codes other than NAICS code 541611, and the rejected NAICS code 541712.

irreparable injury if injunctive relief is not granted, "[w]hen assessing irreparable injury, '[t]he relevant inquiry in weighing this factor is whether plaintiff has an adequate remedy in the absence of an injunction.'" *Insight Sys. Corp. v. United States*, 110 Fed. Cl. 564, 582 (2013) (quoting *Magellan Corp. v. United States*, 27 Fed.Cl. 446, 447 (1993)); *see also CW Gov't Travel, Inc. v. United States*, 110 Fed.Cl. at 494; *Overstreet Elec. Co. v. United States*, 47 Fed.Cl. 728, 743 (2000). "The Court of Federal Claims has repeatedly held that a protester suffers irreparable harm if it is deprived of the opportunity to compete fairly for a contract." *CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. at 494 (citing *CRAssociates, Inc. v. United States*, 95 Fed.Cl. 357, 390–91 (2010); *Serco, Inc. v. United States*, 81 Fed.Cl. 463, 501–02 (2008); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 52 Fed.Cl. 826, 828 (2002)); *see also BINL, Inc. v. United States*, 106 Fed.Cl. 26, 48 (2012) ("Irreparable harm is established by a lost opportunity to fairly compete."); *HP Enter. Servs., LLC v. United States*, 104 Fed.Cl. at 245; *Magnum Opus Tech., Inc. v. United States*, 94 Fed.Cl. 512, 544 (2010) ("A lost opportunity to compete in a fair competitive bidding process for a contract is sufficient to demonstrate irreparable harm."). Protestor contends that, "Palladian is a small business and the subcontractor currently providing the services required under the Solicitation. Absent an injunctive [sic], Plaintiff will be ineligible to compete for the contract." This court agrees that without an injunction, Palladian will not have an opportunity to compete in this solicitation, and possibly for five years. The loss of an opportunity to compete represents not only irreparable injury in terms of lost profit, but also in terms of lost experience working with the government. *See BINL, Inc. v. United States*, 106 Fed.Cl. at 48 ("Irreparable harm is established by a lost opportunity to fairly compete."); *see also Magnum Opus Tech., Inc. v. United States*, 94 Fed.Cl. at 544. Moreover, the loss of an opportunity to gain experience working with the federal government takes on greater importance when dealing with small businesses, which may not have as many such opportunities. *See* 15 U.S.C. § 631 (2012) ("It is the declared policy of the Congress that the Government should aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise...."). Here, the contract to be awarded is a one year contract with four additional one year options, potentially preventing protestor from having an opportunity to work with NIDA on this effort for five years.

 Assessing the balance of hardships, the court recognizes the possible burden placed on NIDA by delaying the review of proposals and selection of an awardee. Nonetheless, "[w]ith respect to the delay that the government states is likely to occur, the Court of Federal Claims has observed that '"only in an exceptional case would [such delay] alone warrant a denial of injunctive relief, or the courts would never grant injunctive relief in bid protests."'" *CW Gov't Travel, Inc. v. United States*, 110 Fed.Cl. at 495 (quoting *Reilly's Wholesale Produce v. United States*, 73 Fed.Cl. 705, 715–16 (2006) (quoting *Ellsworth Assocs., Inc. v. United States*, 45 Fed.Cl. 399, 399 (1999))); *see also Insight Sys. Corp. v. United States*, 110 Fed. Cl. at 582.

 Regarding the public interest factor, "'[t]he public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid.'" *CW Gov't Travel, Inc. v. United States*, 110 Fed.Cl. at 495 (quoting *PGBA, LLC v. United States*, 57 Fed.Cl. 655, 663 (2003)); *see also Cohen Fin. Servs., Inc. v. United States*, 110 Fed.Cl. at 289; *United Int'l Investigative Servs., Inc. v. United States*, 41 Fed.Cl. at 323 ("[T]he public has a strong interest in preserving the integrity of the procurement process.") (citing *Parcel 49C Ltd. P'ship v. United States*, 31 F.3d 1147, 1153 (Fed.Cir.1994)); *PCI/RCI v. United States*, 36 Fed.Cl. 761, 776 (1996) (finding that the public interest in protecting the integrity of the procurement system from irrational conduct was served by granting a permanent injunction); *see also Magellan Corp. v. United States*, 27 Fed.Cl. at 448; *BINL, Inc. v. United States*, 106 Fed.Cl. at 49 ("With regard to the public interest, it is

well-settled that there is a public interest in remedying violations of law."). While there can be a public interest in promptly disseminating materials that could aid in research and education in public health, this interest can be overcome by the public interest in conducting procurements, including the NIDA procurement at issue, in compliance with the FAR. An important public interest is served by conducting "honest, open, and fair competition" under the FAR, in which all proposers have access to the same opportunity to compete. *See CW Gov't Travel, Inc. v. United States*, 110 Fed.Cl. at 495 (quotation omitted). Because the protestor has demonstrated success on the merits, and because the equitable factors weigh in the protestor's favor, a permanent injunction against the receipt and review of proposals for solicitation N01DA–14–4423, as it is written using NAICS code 541611, is warranted.

Protestor further requests that the court "issue declaratory relief declaring that the Solicitation should be re-designated under NAICS code 519130." In the May 6, 2014 hearing, protestor offered another suggestion, which was that the court "stop a procurement for all codes except 519130." Protestor claims that "this Court has repeatedly provided the type of relief requested by Plaintiff," citing to *Red River Service Corp. v. United States*, 60 Fed.Cl. 532, *Overstreet Electric Co., Inc. v. United States*, 47 Fed.Cl. at 745, and *Rotech Healthcare, Inc. v. United States*, 71 Fed.Cl. 393, 431 (2006). Protestor, however, was unable to identify a prior case in which this court, in the context of a NAICS code review, affirmatively selected a NAICS code for the contracting officer to assign to the given solicitation. *See, e.g., Rotech Healthcare Inc. v. United* States, 71 Fed.Cl. at 431 (setting aside the solicitation and acknowledging that the "plain language of RFPs 583 and 247 appears to contradict the CO's choice" in NAICS code, but not making an affirmative declaration as to which NAICS code the agency should use); *Red River Serv. Corp. v. United States*, 60 Fed. Cl. at 550 (setting aside the NAICS code chosen by the agency, but declining to select an alternative). Although under 28 U.S.C. § 1491, "courts may award any relief that the court considers proper, including declaratory and injunctive relief ...," the court's review in this instance is more limited than protestor desires, and is focused on determining whether the contracting officer's decision to amend the solicitation to be under NAICS code 541611 was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (2)(D). While the parties' briefing on NAICS code 519130 was instructive, as it provided an example of a NAICS code potentially better suited to the solicitation's statement of work than NAICS code 541611, the role of the court is not to determine which NAICS code best describes the statement of work in the solicitation, or to select a NAICS code for insertion into the solicitation. This court, however, has determined that the selection of NAICS code 541611 for the solicitation was arbitrary and capricious, and contrary to law. The court, therefore, remands to the agency to make an informed and proper NAICS code selection, given the current statement of work, or to determine how otherwise to proceed. *See Beta Analytics Int'l, Inc. v. United States*, 67 Fed.Cl. 384, 395 (2005) (noting that matters of technical expertise are best left to "the special expertise of procurement officials" (citing *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed.Cir.1996))).

## CONCLUSION

After review of the record before the court, the court finds that the contracting officer's actions were arbitrary and capricious, and contrary to law, and a permanent injunction is warranted. NAICS code 541611, "Administrative Management and General Management Consulting Services," does not best describe the statement of work of solicitation N01DA–14–4423. Therefore, the court sustains Palladian's pre-award protest. The protestor's motion for judgment on the administrative record is **GRANTED**. Defendant's cross-motion for judgment on the administrative record is **DENIED**. The Clerk of the Court shall enter a permanent injunction against the receipt and review of proposals for solicitation N01DA–14–4423, as amended, under NAICS code 541611. The

Clerk of the Court shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**